Filed 4/24/17

# IN THE SUPREME COURT OF CALIFORNIA

|  |  |  |
|---|---|---|
| In re KRISTOPHER KIRCHNER<br><br>on Habeas Corpus. | ) ) ) ) ) ) ) ) ) ) ) | S233508<br><br>Ct.App. 4/1 D067920<br><br>San Diego County<br>Super. Ct. Nos. HC21804, CRN26291 |

In *Miller v. Alabama* (2012) 567 U.S. ___ [132 S.Ct. 2455] (*Miller*), the United States Supreme Court ruled that under the Eighth Amendment to the United States Constitution "a state may authorize its courts to impose [a sentence of] life without parole on a juvenile homicide offender [only] when the penalty is discretionary and when the sentencing court's discretion is properly exercised . . . ." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1379 (*Gutierrez*).) The proper exercise of discretion in this context requires the sentencing court to consider relevant evidence as may exist concerning factors that *Miller* identified as bearing on the "distinctive attributes of youth" and how these attributes "diminish the penological justifications for imposing the harshest sentences on juvenile offenders." (*Miller*, at p. ___ [132 S.Ct. at p. 2465]; see also *Gutierrez*, at pp. 1388-1390.)

Petitioner Kristopher Kirchner committed murder as a 16 year old, for which he is serving a sentence of life without the possibility of parole (hereinafter life without parole). The People have conceded that in imposing this sentence, the sentencing court did not give due consideration to the *Miller* factors. The judgment in petitioner's original

1

criminal proceedings became final more than two decades ago, when petitioner did not pursue his appeal. Through this proceeding for a writ of habeas corpus, petitioner seeks a resentencing hearing at which the court would properly integrate the *Miller* factors into its sentencing calculus, potentially leading to a new sentence that would offer the possibility of parole. After the superior court granted habeas corpus relief, the Court of Appeal reversed. The Court of Appeal determined that the existence of a statutory mechanism, Penal Code section 1170, subdivision (d)(2) (hereafter section 1170(d)(2)),[1] through which petitioner could seek recall of his sentence and resentencing to a term of life with the opportunity for parole, remedied any constitutional defect in petitioner's sentence, and therefore precluded habeas corpus relief.

We hold that section 1170(d)(2) does not provide an adequate remedy at law for *Miller* error, and that petitioner may obtain a *Miller* resentencing as a form of habeas corpus relief. Section 1170(d)(2) was not designed to address *Miller* error, and its recall of sentence and resentencing procedure is not well suited to remedy the constitutional error of which petitioner complains. Specifically, as a process designed to revisit *lawful* sentences of life without parole, section 1170(d)(2) limits the availability of resentencing under its terms, and the resentencing inquiry it prescribes does not necessarily account for the full array of *Miller* factors in the manner that a proper resentencing under *Miller* would. Even though petitioner conceivably could avail himself of the section 1170(d)(2) process, we conclude that his claim of constitutional error need not be pursued, either exclusively or in the first instance, through this statutory scheme. Because petitioner cannot be required to exhaust the section 1170(d)(2) procedure prior to seeking habeas corpus relief from his sentence, let alone accept section 1170(d)(2) as his exclusive remedy, we reverse the judgment of the Court of Appeal.

---

[1] Statutory references are to the Penal Code unless otherwise indicated.

2

# I. FACTUAL AND PROCEDURAL BACKGROUND

In April 1993, petitioner and another juvenile robbed and murdered the owner of a gun store.  Petitioner beat the victim to death with a metal pipe.  After being found unfit for juvenile court proceedings (see Welf. & Inst. Code, § 707) petitioner was charged and tried as an adult.  Following a bench trial, petitioner was convicted of first degree murder (§ 187, subd. (a)), robbery (§ 211), and burglary (§ 459).  The court also found true enhancement allegations that petitioner personally used a deadly weapon (former § 12022, subd. (b)) and personally inflicted great bodily injury (former § 12022.7), and the special circumstances that petitioner committed the murder while engaged in a burglary and a robbery (§ 190.2, subd. (a)(17)).

Prior to sentencing, petitioner was found amenable to the treatment and training services offered by the California Youth Authority (now the Div. of Juvenile Justice).  The referral report advised that petitioner "has the physical and mental capacity to change" and "there is a reasonable possibility that [petitioner's] likelihood to commit criminal behavior can be significantly reduced or eliminated within the confinement time or jurisdiction time available."  The court declined to follow this recommendation in pronouncing sentence and described petitioner as a "clear demonstration of a person whose life has turned to complete and ultimate violence."  For the murder with its attendant allegations, the court sentenced petitioner to life without parole, plus one year for the weapon enhancement.  The sentences for the robbery and burglary counts, with their associated enhancements, were stayed.

Petitioner filed a notice of appeal, but he did not file an opening brief in the Court of Appeal.  His appeal was therefore dismissed.

The present petition for writ of habeas corpus was filed in October 2014.  Through this collateral proceeding, petitioner attacks his sentence of life without parole on the ground that it was imposed without appropriate consideration of the array of factors specified in *Miller*, *supra*, 567 U.S. ___ [132 S.Ct. 2455].  Petitioner seeks a resentencing

3

hearing in which these factors will be properly taken into account, potentially leading to a new sentence that will incorporate an opportunity for parole.

Following a review of the petition, the superior court issued an order to show cause. In a return to the order to show cause, the People acknowledged that "the record does not show that the judge considered all the factors relating to petitioner's youth as now required by *Miller* and *Gutierrez*." The People also conceded, at first, that petitioner was entitled to resentencing, but reserved the right to argue for reimposition of a sentence of life without parole at a new sentencing hearing. In a supplemental filing, however, the People objected that *Miller* did not apply retroactively. The superior court rejected the People's retroactivity argument, granted the petition for writ of habeas corpus, and remanded the matter to the trial court for resentencing.

The People appealed. After oral argument, the Court of Appeal requested and received supplemental briefing on the relationship between the section 1170(d)(2) recall of sentence and resentencing procedure and language in *Montgomery v. Louisiana* (2016) 577 U.S. ___ [136 S.Ct. 718] (*Montgomery*) providing that "[a] State may remedy a *Miller* violation by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them. [Citation.] Allowing those offenders to be considered for parole ensures that juveniles whose crimes reflected only transient immaturity — and who have since matured — will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment."[2] (*Montgomery*, at p. ___ [136 S.Ct. at p. 736].)

The Court of Appeal's ensuing decision held that habeas corpus relief was unavailable to petitioner because section 1170(d)(2) provided an adequate remedy at law. It determined that "where, as is the case in California, a legislature has provided inmates

---

[2]    As discussed in more detail *post*, *Montgomery*, *supra*, 577 U.S. ___ [136 S.Ct. 718] made this observation after determining that *Miller* operated retroactively. (*Id.*, at p. ___ [136 S.Ct. at p. 736].) *Montgomery*'s holding on retroactivity resolved the issue on which the People originally premised their appeal.

serving life sentences for crimes committed while they were juveniles with an opportunity to obtain a parole hearing, the state has remedied any constitutional defect in the inmate's sentence." The Court of Appeal acknowledged that "section 1170, subdivision (d)(2) does *not* provide an inmate with a parole hearing" as a certain matter; rather, the inmate must petition for recall of sentence and resentencing to engage a process that then *might* lead to a sentence that incorporates an opportunity for parole. Nevertheless, the Court of Appeal determined that section 1170(d)(2) "provides [the inmate] with all the rights set forth in *Miller* and *Montgomery*."

The Court of Appeal conceded that "where a prisoner is serving [a] . . . sentence [of life without parole] for a crime committed while he or she was a juvenile, and at the time of his or her sentence the trial judge failed to employ the procedures required by *Miller*, his or her sentence is *presumptively* unlawful and he or she is entitled to relief from it." For this reason, it determined that "a petition under section 1170, subdivision (d)(2) will meet the requirements of *Miller* and *Montgomery*, only if, at both the trial court's review of the sufficiency of the petition [citation] and at any hearing ordered thereafter, the People bear the burden, as they would at any initial sentencing under *Miller* and *Gutierrez*, of showing that the defendant is one of the rare individuals for whom no possibility of parole should be provided."

We granted review.[3]

## II. DISCUSSION

In determining whether the Court of Appeal erred in casting section 1170(d)(2) as an adequate remedy at law that precludes habeas corpus relief for *Miller* error, we first

---

[3] Shortly after the Court of Appeal filed its decision, another panel of the Fourth Appellate District, Division One, concluded that section 1170(d)(2) did not provide an adequate remedy for *Miller* error, expressly disagreeing with the contrary conclusion reached by the Court of Appeal in this matter. (*People v. Berg* (2016) 247 Cal.App.4th 418, 432-442, review granted July 27, 2016.)

5

review the United States Supreme Court's recent jurisprudence concerning sentences of life without parole for juvenile offenders. We then turn to section 1170(d)(2) and analyze that provision's bearing upon habeas corpus proceedings that seek a proper resentencing under *Miller*.

### A. Recent Supreme Court Jurisprudence

The Eighth Amendment to the United States Constitution prohibits the infliction of "cruel and unusual punishments." (U.S. Const., 8th Amend.) The "cruel and unusual" standard is construed by reference "to 'the evolving standards of decency that mark the progress of a maturing society' to determine which punishments are so disproportionate as to be cruel and unusual." (*Roper v. Simmons* (2005) 543 U.S. 551, 561 (*Roper*), quoting *Trop v. Dulles* (1958) 356 U.S. 86, 101 (plur. opn. of Warren, C. J.).)

Some punishment is cruel and unusual as it pertains to juvenile offenders, even though the same sanction may not run afoul of the Eighth Amendment when applied to adults. In *Roper*, *supra*, 543 U.S. 551, the United States Supreme Court determined that the Eighth Amendment categorically prohibited imposition of the death penalty on juvenile offenders. (*Roper*, at p. 568.) In reaching this conclusion, the court observed that "[t]hree general differences between juveniles under 18 and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders." (*Id*., at p. 569.) First, " '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.' " (*Ibid*., quoting *Johnson v. Texas* (1993) 509 U.S. 350, 367.) A "second area of difference is that juveniles are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure." (*Ibid*.) And third, "the character of a juvenile is not as well formed as that of an adult. The personality traits of juveniles are more transitory, less fixed." (*Id*., at p. 570.) Put together, "These differences render suspect any conclusion that a juvenile falls among the worst offenders. The susceptibility of juveniles

6

to immature and irresponsible behavior means 'their irresponsible conduct is not as morally reprehensible as that of an adult.' [Citation.] Their own vulnerability and comparative lack of control over their immediate surroundings mean juveniles have a greater claim than adults to be forgiven for failing to escape negative influences in their whole environment. [Citation.] The reality that juveniles still struggle to define their identity means it is less supportable to conclude that even a heinous crime committed by a juvenile is evidence of irretrievably depraved character. From a moral standpoint it would be misguided to equate the failings of a minor with those of an adult, for a greater possibility exists that a minor's character deficiencies will be reformed." (*Ibid*.)

After its decision in *Roper* made juvenile offenders ineligible for the death penalty, the high court has on several occasions considered the relationship between the Eighth Amendment's prohibition of "cruel and unusual punishments" and sentences of life without parole for this same class of defendants. In *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*), the court held that the Eighth Amendment prohibits sentences of life without parole for juvenile offenders who have committed crimes other than homicides. The court reasoned that "[l]ife without parole is an especially harsh punishment for a juvenile" (*Graham*, at p. 70), and the imposition of such a sentence for a nonhomicide crime could not be justified by retribution, deterrence, incapacitation, or rehabilitation interests. (*Id*., at pp. 71-75.) Although "[a] State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime," because "[t]hose who commit truly horrifying crimes as juveniles may turn out to be irredeemable," the court held that the Eighth Amendment prohibits "[s]tates from making the judgment at the outset" that juvenile offenders convicted of nonhomicide crimes "will never be fit to reenter society." (*Id*., at p. 75.) Therefore, the court directed that these defendants be provided "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." (*Ibid*.)

7

Two years later, in *Miller*, *supra*, 567 U.S. ___ [132 S.Ct. 2455], the court considered whether the Eighth Amendment prohibits sentencing schemes that mandate a life without parole sentence for *all* juvenile offenders convicted of a specific homicide offense. In finding these sentencing schemes unconstitutional, *Miller* condemned them as impermissibly "preclud[ing] a sentencer from taking account of an offender's age and the wealth of characteristics and circumstances attendant to it." (*Id*., at p. ___ [132 S.Ct. at p. 2467].) Because the 14-year-old defendants in *Miller* had been sentenced pursuant to mandatory sentencing laws, the court declined to address their alternative argument that the Eighth Amendment categorically prohibits sentences of life without parole for all juvenile offenders, or at least those 14 years of age or younger at the time of their crimes. (*Id*., at p. ___ [132 S.Ct. at p. 2469].) *Miller* cautioned, however, that "given all we have said . . . about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty . . . of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' [Citations.] Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Ibid*.)

In its analysis, *Miller*, *supra*, 567 U.S. ___ [132 S.Ct. 2455] provided a "recap" of factors relevant to the imposition of "a State's harshest penalties" upon a juvenile offender. (*Id*., at p. ___ [132 S.Ct. at p. 2468].) These factors provide a framework for sentencing courts to "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." (*Id*., at p. ___ [132 S.Ct. at p. 2469].) As we explained in *Gutierrez*, *supra*, 58 Cal.4th 1354, under *Miller* a sentencing court considering a sentence of life without parole for a

juvenile offender must consider evidence that may exist regarding (1) "a juvenile offender's 'chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences' "; (2) " 'the family and home environment that surrounds [the juvenile] — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional' "; (3) " 'the circumstances of the homicide offense, including the extent of [the juvenile defendant's] participation in the conduct and the way familial and peer pressures may have affected him' "; (4) "whether the offender 'might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys' "; and (5) "the possibility of rehabilitation." (*Id.*, at pp. 1388-1389, quoting *Miller*, 567 U.S. at p. ___ [132 S.Ct. at p. 2468].)

Most recently, in *Montgomery*, *supra*, 577 U.S. ___ [136 S.Ct. 718], the court clarified that *Miller* announced a substantive rather than a procedural rule, and therefore operates retroactively. (*Montgomery*, 577 U.S. at p. ___ [136 S.Ct. at p. 736].) *Montgomery* explained that "*Miller* . . . did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of 'the distinctive attributes of youth.' [Citation.] Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects ' "unfortunate yet transient immaturity." ' [Citation.] Because *Miller* determined that sentencing a child to life without parole is excessive for all but ' "the rare juvenile offender whose crime reflects irreparable corruption," ' [citation], it rendered life without parole an unconstitutional penalty for 'a class of defendants because of their status' — that is, juvenile offenders whose crimes reflect the transient immaturity of youth. [Citation.] As a result, *Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive because it

' "necessarily carr[ies] a significant risk that a defendant" ' — here, the vast majority of juvenile offenders — ' "faces a punishment that the law cannot impose on him." ' [Citation.]"  (*Montgomery*, at p. ___ [136 S.Ct. at p. 734].)

### B.    Section 1170(d)(2)

Senate Bill No. 9 (2011-2012 Reg. Sess.), the measure that added subdivision (d)(2) to section 1170, was introduced in the Legislature after *Graham*, but before *Miller*.  Like *Graham*, *supra*, 560 U.S. 48, *Miller*, *supra*, 567 U.S. ___ [132 S.Ct. 2455], and *Montgomery*, *supra*, 577 U.S. ___ [136 S.Ct. 718], section 1170(d)(2) was inspired by concerns regarding sentences of life without parole for juvenile offenders. (See Assem. Com. on Appropriations, Analysis of Sen. Bill No. 9 (2011-2012 Reg. Sess.) as amended Aug. 15, 2011, pp. 3-6.)

As enacted, section 1170(d)(2) provides an avenue for juvenile offenders serving terms of life without parole to seek recall of their sentences and resentencing to a term that includes an opportunity for parole.[4]  This process is unavailable to a defendant sentenced to life without parole where it was pleaded and proved that the defendant tortured his or her victim, or that the victim was a public safety official, another law enforcement officer, or a firefighter.  (§ 1170, subd. (d)(2)(A)(ii).)[5]  An eligible

---

[4]    Juveniles sentenced to life without parole presently are ineligible for the "youth offender parole hearing[s]" under section 3051 that are available to most other juvenile offenders and defendants under 23 years of age at the time of their controlling offense. (See § 3051.)  In *People v. Franklin* (2016) 63 Cal.4th 261, we determined that an inmate eligible for a youth offender parole hearing is not serving the "functional equivalent" of life without parole, meaning that his or her sentence does not implicate *Miller* and its strictures.  (*People v. Franklin*, at pp. 278-280.)  Pending legislation would make juvenile offenders sentenced to life without parole eligible for these hearings in their 25th year of incarceration.  (Sen. Bill No. 394 (2017-2018 Reg. Sess.), as introduced Feb. 15, 2017, § 1.)

[5]    The Legislature amended section 1170(d)(2) in various respects last year. (Stats. 2016, ch. 867, § 1.1.)  These amendments became effective on January 1, 2017. Our discussion of the section 1170(d)(2) procedure reflects the statute's present terms.

defendant may file a petition requesting recall and resentencing with the sentencing court after having been incarcerated for at least 15 years. (*Id*., subd. (d)(2)(A)(i).) In this petition, the defendant must describe his or her remorse, relate his or her work toward rehabilitation, and state that a qualifying circumstance is true.[6] (*Id*., subd. (d)(2)(B).) If the court finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant's sentence and hold a hearing to resentence the defendant. (*Id*., subd. (d)(2)(E).)

During this hearing, in deciding whether to resentence the defendant to a term of imprisonment with the possibility of parole the court "may consider" factors that "include, but are not limited to, the following: [¶] (i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law. [¶] (ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the defendant was sentenced to life without the possibility of parole. [¶] (iii) The defendant committed the offense with at least one adult codefendant. [¶] (iv) Prior to the offense for which the defendant was sentenced to life without the possibility of parole, the defendant had insufficient adult support or supervision and had suffered from psychological or physical trauma, or significant stress. [¶] (v) The defendant suffers from cognitive limitations due to mental illness, developmental disabilities, or other factors

---

[6]    These circumstances consist of: "(i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law. [¶] (ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall. [¶] (iii) The defendant committed the offense with at least one adult codefendant. [¶] (iv) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, or showing evidence of remorse." (§ 1170, subd. (d)(2)(B)(i)-(iv).)

that did not constitute a defense, but influenced the defendant's involvement in the offense. [¶] (vi) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, or showing evidence of remorse. [¶] (vii) The defendant has maintained family ties or connections with others through letter writing, calls, or visits, or has eliminated contact with individuals outside of prison who are currently involved with crime. [¶] (viii) The defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor." (§ 1170, subd. (d)(2)(F).) In addition, the court may consider "any other criteria that the court deems relevant to its decision, so long as the court identifies them on the record, provides a statement of reasons for adopting them, and states why the defendant does or does not satisfy the criteria." (*Id*., subd. (d)(2)(I).)

Upon conducting this assessment, "The court shall have the discretion to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subd. (d)(2)(G).) If the defendant's first section 1170(d)(2) petition does not result in resentencing to a term of imprisonment with the possibility of parole, he or she may apply again for section 1170(d)(2) relief after having been committed to custody for at least 20 years. (*Id*., subd. (d)(2)(H).) A defendant may file a third petition after serving 24 years of his or her sentence of life without parole. (*Ibid*.)

This court has had one prior opportunity to consider the intersection of the Eighth Amendment, sentences of life without parole for juvenile offenders, and section 1170(d)(2). In *Gutierrez, supra*, 58 Cal.4th 1354, we construed section 190.5, subdivision (b), which provides that the penalty for special circumstance murder, when committed by a 16 or 17 year old, "shall be confinement in the state prison for life

12

without the possibility of parole or, at the discretion of the court, 25 years to life."
(§ 190.5, subd. (b).) Both defendants in *Gutierrez* had been convicted of special circumstance murder for crimes committed as juveniles, and sentenced to life without parole under section 190.5, subdivision (b). (*Gutierrez*, at p. 1360.) On appeal, they argued that their sentences had been skewed by a presumption read into section 190.5, subdivision (b) by the Courts of Appeal (e.g., *People v. Guinn* (1994) 28 Cal.App.4th 1130) and trial courts that life without parole was the appropriate penalty for juvenile offenders convicted of special circumstance murder. (*Gutierrez*, at pp. 1365, 1368, 1369.)

In addressing this argument, *Gutierrez*, *supra*, 58 Cal.4th 1354, considered and rejected the People's contention that the section 1170(d)(2) process eliminated the constitutional concerns that otherwise might be associated with reading a presumption in favor of a life without parole sentence into section 190.5, subdivision (b).[7] We explained that "[n]either *Miller* nor *Graham* indicated that an opportunity to recall a sentence of life without parole 15 to 24 years into the future would somehow make more reliable or justifiable the imposition of that sentence and its underlying judgment of the offender's incorrigibility 'at the outset.' " (*Gutierrez*, *supra*, 58 Cal.4th at p. 1386, quoting *Graham*, *supra*, 560 U.S. at p. 75.) We also observed that "the high court in *Graham* explained that a juvenile offender's subsequent failure to rehabilitate while serving a sentence of life without parole cannot retroactively justify imposition of the sentence in the first instance . . . . By the same logic, it is doubtful that the potential to recall a life without parole sentence based on a future demonstration of rehabilitation can make such a

---

[7]     *Gutierrez* ultimately concluded that such a presumption would generate "serious constitutional concerns," and therefore held "that section 190.5[, subdivision] (b) confers discretion on the sentencing court to impose either life without parole or a term of 25 years to life on a 16- or 17- year-old juvenile convicted of special circumstance murder, with no presumption in favor of life without parole." (*Gutierrez*, *supra*, 58 Cal.4th at p. 1387.)

sentence any more valid when it was imposed. If anything, a decision to recall the sentence pursuant to section 1170(d)(2) is a recognition that the initial judgment of incorrigibility underlying the imposition of life without parole turned out to be erroneous." (*Gutierrez*, at pp. 1386-1387.)

The Court of Appeal below acknowledged *Gutierrez*'s determination that the prospect of resentencing under section 1170(d)(2) represents an inadequate response to the concerns implicated by a court's failure to properly integrate the *Miller* factors into its initial sentencing decision. The Court of Appeal regarded the present matter as distinguishable, however, in that it involves a collateral challenge to a sentence, rather than a direct appeal. The Court of Appeal determined that a different rule should apply in this context, whereby the existence of an adequate remedy at law will displace habeas corpus proceedings targeting *Miller* error. We consider this position next.

### C.     Habeas Corpus Proceedings and Section 1170(d)(2)

"Habeas corpus is an 'extraordinary remedy.' [Citation.]" (*In re Clark* (1993) 5 Cal.4th 750, 764, fn. 3.) As a general rule, it "may not be invoked where the accused has such a remedy under the orderly provisions of a statute designed to rule the specific case upon which he relies for" relief (*In re Alpine* (1928) 203 Cal. 731, 739), at least when the remedy at law is "well suited, in ordinary circumstances, to enforc[e]" or vindicate the right being asserted (*In re Gandolfo* (1984) 36 Cal.3d 889, 899). (See also 6 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Criminal Writs, § 25, p. 630 ["habeas corpus is not a proper remedy to review errors that could be raised on appeal or by other appropriate remedies, and . . . ordinarily the aggrieved party must exhaust those remedies"].)

The Court of Appeal applied these principles to this matter.[8] It construed section 1170(d)(2) as a constitutionally adequate remedy for *Miller* error, so that petitioner must

---

[8]     Because the Court of Appeal was not entirely clear whether it regarded the section 1170(d)(2) recall of sentence and resentencing process as entirely displacing the writ of

14

pursue recall and resentencing through section 1170(d)(2) as an absolute substitute for, or at least a prerequisite to, obtaining a *Miller* resentencing as a form of habeas corpus relief. [9]

As explained below, we disagree with this characterization of the section 1170(d)(2) procedure as an adequate remedy for *Miller* error. Having originally been developed prior to the decision in *Miller*, the section 1170(d)(2) process was not designed to provide a remedy for this type of error, and it is not well suited to serve this purpose. Instead, the section 1170(d)(2) recall and resentencing process anticipates the lawfulness of a sentence of life without parole potentially subject to recall under its terms. Resentencing under section 1170(d)(2) is thus unavailable to certain juvenile offenders sentenced to life without parole — without regard to whether their sentences comport with *Miller* — and does not necessarily require consideration of all relevant evidence bearing on the *Miller* factors, through the lens prescribed by *Miller*, as part of the resentencing inquiry. These features, although reasonable given the assumption of a lawful sentence, also establish that resort to the section 1170(d)(2) process should not be required in lieu or in advance of habeas corpus proceedings where, as here, the petitioner's original sentence is infirm under *Miller*.

One flaw with characterizing section 1170(d)(2) as an adequate remedy at law for *Miller* error involves the limitations the statute imposes on who may engage this process. As previously observed, to initiate section 1170(d)(2) proceedings a juvenile offender

habeas corpus as a remedy for *Miller* error, or as merely a procedure that must be exhausted as a prerequisite to habeas corpus proceedings, our analysis addresses both of these possibilities.

[9] We have recognized that in appropriate contexts, habeas corpus proceedings may provide a vehicle to obtain relief limited to a new sentencing hearing in the original criminal action, which may result in a different sentence. (See, e.g., *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530, fn. 13; *In re Lewallen* (1979) 23 Cal.3d 274, 282; *In re Levi* (1952) 39 Cal.2d 41, 47.)

15

sentenced to life without parole must not have committed an offense as to which it was pleaded and proved that they tortured the victim, or that the victim was a public safety official, another law enforcement officer, or a firefighter. (§ 1170, subd. (d)(2)(A)(ii).)[10] Furthermore, to be resentenced under section 1170(d)(2), other juvenile offenders sentenced to life without parole must submit a petition to the sentencing court that describes their remorse, relates their efforts at rehabilitation, and states that at least one of four qualifying circumstances applies; the sentencing court then must find by a preponderance of the evidence that at least one qualifying circumstance related in the petition is true. (§ 1170, subd. (d)(2)(B), (E).) The statute's categorical exclusion of certain offenders and its threshold pleading requirements both have the potential of making resentencing under section 1170(d)(2) unavailable to some juvenile offenders who are serving sentences that contravene *Miller*, *supra*, 567 U.S. ___ [132 S.Ct. 2455].[11] Thus, even if section 1170(d)(2) provided an adequate remedy at law for *Miller* error for those juvenile offenders capable of being resentenced under its terms, it would not provide such a vehicle for relief for other defendants, also serving sentences that do not comport with *Miller*, who are either categorically excluded from this process or whose petitions do not meet the criteria for resentencing.

---

[10] These exclusions underscore that treating section 1170(d)(2) as an adequate remedy at law for *Miller* error would create a number of dubious distinctions. Among them, with section 1170, subdivision (d)(2)(A)(ii), the Legislature presumably sought to deny juvenile offenders who committed what might be perceived as particularly heinous crimes the benefit of the section 1170(d)(2) process. Yet if section 1170(d)(2) were regarded as the exclusive remedy for *Miller* error for those defendants eligible to engage this process, juvenile offenders subject to section 1170, subdivision (d)(2)(A)(ii) could pursue habeas corpus relief for their claims of *Miller* error directly, whereas juvenile offenders serving sentences of life without parole for other offenses would be limited to section 1170(d)(2), notwithstanding its shortcomings as a vehicle to remedy *Miller* error.

[11] Section 1170(d)(2) also affords no remedy to defendants who have not yet served 15 years of their sentences, or who thrice petitioned for recall of sentence and resentencing, but were not resentenced to a term offering an opportunity for parole.

16

Even more fundamentally, the ultimate resentencing inquiry specified under section 1170(d)(2) is not designed to address *Miller* error, and will not necessarily provide a defendant with the lawful sentence that *Miller* requires. As we have explained, under *Miller*, prior to sentencing a juvenile offender to life without parole, a court *must* give proper consideration to (1) "a juvenile offender's 'chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences' "; (2) " 'the family and home environment that surrounds [the juvenile] — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional' "; (3) " 'the circumstances of the homicide offense, including the extent of [the juvenile defendant's] participation in the conduct and the way familial and peer pressures may have affected him' "; (4) "whether the offender 'might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys' "; and (5) "the possibility of rehabilitation." (*Gutierrez*, 58 Cal.4th at pp. 1388-1389, quoting *Miller*, 567 U.S. at p. ___ [132 S.Ct. at p. 2468].) In contrast, section 1170(d)(2) provides that when resentencing a defendant a court "may consider" a set of enumerated factors, which only partially overlap with those identified in *Miller*. (§ 1170, subd. (d)(2)(F).) The court also "may consider any other criteria that the court deems relevant to its decision" (§ 1170, subd. (d)(2)(I)), language that suggests the court may consider all pertinent *Miller* factors through this route. But the *possibility* of consideration is not the same as the certainty that *Miller* and *Montgomery* demand.

The above circumstances establish to our satisfaction that the recall of sentence and resentencing process provided under section 1170(d)(2) does not constitute an adequate remedy for *Miller* error that would displace habeas corpus proceedings in this context. In crucial respects, section 1170(d)(2) is different from statutes that automatically provide a timely parole hearing to juvenile offenders sentenced to terms

17

that otherwise might raise Eighth Amendment concerns. By simply transforming the affected sentences to life with parole terms, those laws avoid the *Miller* issues associated with the earlier sentences. (See *Montgomery*, *supra*, 577 U.S. at p. ___ [136 S.Ct. at p. 736] [identifying Wyo.Stat.Ann. § 6–10–301(c), which provides that juvenile offenders sentenced to life terms shall receive parole hearings after 25 years of incarceration, as an example of an adequate response to *Miller*]; *People v. Franklin*, *supra*, 63 Cal.4th at pp. 278-280 [finding *Miller* issues moot with regard to defendants subject to § 3051, subd. (b)(1)-(3), which provides for parole hearings for certain juvenile offenders no later than their 25th year of incarceration].) Section 1170(d)(2), by contrast — having been designed as a method to revisit lawfully imposed sentences of life without parole — provides only a selective and qualified remedy, the application of which is ultimately premised on an inquiry that may, but does not necessarily, overlap with the one demanded under *Miller*.

Arguably, section 1170(d)(2)'s shortfalls as an adequate remedy at law loom larger insofar as the statute would be cast as completely displacing habeas corpus proceedings that seek a proper resentencing under *Miller*, as opposed to merely a procedure that must be exhausted prior to the initiation of a collateral challenge to a sentence brought on the basis of alleged *Miller* error. Nevertheless, a rule that would require resort to section 1170(d)(2) as a prerequisite to any habeas corpus proceedings in this context would, at a minimum, interpose additional proceedings — culminating in a potentially inapposite inquiry — ahead of the vindication of a constitutional right, and assign to section 1170(d)(2) a function it was not designed to perform. With regard to the latter point, nothing within the language or history of section 1170(d)(2), as originally enacted or recently amended, suggests that the Legislature perceived this procedure as *necessarily* implicated whenever a claim of *Miller* error arises. On the contrary, the Legislature's recent revision of the statute (Stats. 2016, ch. 867) points unmistakably in the opposite direction, with the newly added section 1170, subdivision (d)(2)(K)

18

providing that "[n]othing in this paragraph is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." (Cf. *People v. Conley* (2016) 63 Cal.4th 646, 661 [discussing similar language in the Three Strikes Reform Act of 2012, § 1170.126, subd. (k)].) We therefore conclude section 1170(d)(2) is not properly regarded as an exclusive remedy for *Miller* error, or as a remedy that must be exhausted prior to the initiation of habeas corpus proceedings that seek a resentencing under *Miller*, *supra*, 567 U.S. ___ [132 S.Ct. 2455].

The situation here does not resemble that involved in *In re Gandolfo*, *supra*, 36 Cal.3d 889, upon which the Court of Appeal relied in characterizing section 1170(d)(2) as an adequate remedy at law. There, we determined that the provisions of the Lanterman-Petris-Short Act (Welf. & Inst. Code, § 5000 et seq.) providing for periodic review of a conservatee's placement were "well suited, in ordinary circumstances, to enforcing the right to an appropriately nonrestrictive environment." (*Gandolfo*, at p. 899.) Given this scheme, we disallowed the routine use of habeas corpus proceedings to seek less restrictive conservatee placements, determining that such an overlap of remedies would "only invite a hopeless flood of cases which would wreak havoc on the 'continuing jurisdiction' of appointing courts." (*Ibid*.) Here, by comparison, allowing petitioner and others in his position to obtain a *Miller* resentencing through habeas corpus proceedings would not undermine the proper functioning of any statutory procedure that is well suited to vindicate their right to a lawful sentence, because as determined above, section 1170(d)(2) is not such a scheme.

The Court of Appeal sought to bridge the disconnects between the section 1170(d)(2) process and the resentencing required under *Miller* by rewriting the statute to impose upon the People the burden "of showing [in § 1170(d)(2) proceedings] that the defendant is one of the rare individuals for whom no possibility of parole should be provided." We decline to so transform the section 1170(d)(2) process into something different from what the Legislature intended — namely, an avenue for recalling lawfully

19

issued sentences of life without parole, and potentially resentencing defendants to terms that incorporate an the opportunity for parole. We consider it preferable to simply recognize that the *possibility* that a resentencing that accounts for the *Miller* factors will occur under section 1170(d)(2) does not represent an adequate substitute for the timely and certain resentencing hearings that *Miller*, *supra*, 567 U.S. ___ [132 S.Ct. 2455], and *Montgomery*, *supra*, 577 U.S. ___ [136 S.Ct. 718] require for persons who, like petitioner, were sentenced without the appropriate consideration of factors bearing on their youth at the time of their offense, and the relationship of those factors to proportionate punishment.[12]

---

[12] Section 1170(d)(2) nevertheless serves a useful purpose in the overall sentencing framework for juvenile offenders. *Miller* and *Montgomery* do not absolutely prohibit sentences of life without parole for juveniles who commit murder. (See *Montgomery*, *supra*, 577 U.S. at p. ___ [136 S.Ct. at p. 734]; *Miller*, *supra*, 567 U.S. at p. ___ [132 S.Ct. at p. 2471].) Section 1170(d)(2) provides a mechanism that allows a second, third, and perhaps even a fourth look at a lawful sentence of life without parole, junctures at which a court may exercise its discretion to issue a new sentence that will afford a juvenile offender an opportunity at parole. Our holding merely provides that a sentence subject to section 1170(d)(2) should itself represent the product of a sentencing where the court has taken "into account 'how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison' " (*Montgomery*, at p. ___ [136 S.Ct. at p. 733], quoting *Miller*, at p. ___ [132 S.Ct. at p. 2469]), as *Miller* and *Montgomery* require.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed and the matter remanded to the Court of Appeal with instructions to affirm the order of the superior court granting habeas corpus relief and to remand the matter to the superior court for a resentencing hearing consistent with *Montgomery*, *supra*, 136 S.Ct. 718, *Miller*, *supra*, 132 S.Ct. 2455, and *Gutierrez*, *supra*, 58 Cal.4th 1354.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** In re Kirchner

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 244 Cal.App.4th 1398
**Rehearing Granted**

_____

**Opinion No.** S233508
**Date Filed:** April 24, 2017

_____

**Court:** Superior
**County:** San Diego
**Judge:** Louis R. Hanoian

_____

**Counsel:**

Randy Mize, Chief Deputy Public Defender, Abbey J. Noel and Troy Anthony Britt, Deputy Public Defenders, for Petitioner Kristopher Kirchner.

Elizabeth M. Calvin; DLA Piper and Steven S. Kimball for Human Rights Watch as Amicus Curiae on behalf of Petitioner Kristopher Kirchner.

Michael T. Risher and L. Richard Braucher for American Civil Liberties Union of Northern California and Pacific Juvenile Defender Center as Amici Curiae on behalf of Petitioner Kristopher Kirchner.

Bonnie M. Dumanis, District Attorney, James E. Atkins, Jennifer Kaplan and Craig E. Fisher, Deputy District Attorneys, for Respondent the People.

Mark Zahner and Kelli Catlett for California District Attorneys Association as Amicus Curiae on behalf of Respondent the People.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Abbey J. Noel
Deputy Public Defender
250 East Main Street, Sixth Floor
El Cajon, CA  92020
(619) 441-4804

Jennifer Kaplan
Deputy District Attorney
330 West Broadway, Suite 860
San Diego, CA  92101
(619) 531-3798