Filed 10/5/21  P. v. Ramazzini CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Colusa)

----

| | |
|---|---|
| THE PEOPLE, | C088503 |
| Plaintiff and Respondent, | (Super. Ct. No. CR35134) |
| v. | |
| NATHAN JOSHUA RAMAZZINI, | |
| Defendant and Appellant. | |

In 1998, defendant Nathan Joshua Ramazzini was sentenced to a term of life without the possibility of parole (LWOP) for a murder he committed as a juvenile.  In 2017, defendant filed a petition for recall and resentencing pursuant to Penal Code[1] section 1170, subdivision (d)(2) (hereafter section 1170(d)(2) [subsequent subdivision references are to this statute]).  After a hearing, the trial court resentenced defendant to an LWOP term.  On appeal, defendant claims (1) his LWOP sentence is contrary to principles articulated in *Miller v. Alabama* (2012) 567 U.S. 460 [183 L.Ed.2d 407]

---

[1]    Undesignated statutory references are to the Penal Code.

1

(*Miller*), which outlined a range of factors a sentencing court should consider before ordering a juvenile to serve an LWOP term, consistent with the Eighth Amendment's ban on cruel and unusual punishment; and (2) the trial court abused its discretion under section 1170(d)(2). subsequent In a supplemental brief, he contends his sentence should be conditionally vacated and the matter remanded to the juvenile court for a fitness hearing under Proposition 57.

The *Miller* claim is moot, the trial court did not abuse its discretion under section 1170(d)(2). Finding Proposition 57 applies because his conviction was no longer final at the section 1170 proceeding, we shall conditionally vacate the conviction and remand with directions to transfer the matter to juvenile court for additional proceedings.

BACKGROUND

A. *The Murder*

The facts of the murder are taken from our nonpublished opinion, *People v. Ramazzini* (Nov. 22, 1999, C030293), affirming the criminal judgment in defendant's original appeal.

On July 16, 1997, the parents of Erik Ingebretsen (a 16-year-old male who lived in Colusa, California) reported him missing.

Defendant, also 16 years old at the time, told law enforcement that he and Ingebretsen were best friends. He claimed the last time he saw Ingebretsen was around 11:00 a.m. on the 15th at defendant's house.

Law enforcement went to defendant's house around 7:30 p.m. on July 16. Defendant's father showed officers his Lincoln Continental, the car his son borrowed the night before. There were bloodstains on the front passenger armrest, seat, and floor. Later, officers found blood on the outside of the car as well. Defendant's father said he did not know how the blood got on the car.

2

Defendant was interviewed again after his father's car had been searched. He speculated that the blood might have gotten on the car earlier in the year when he had too much to drink and threw up in the car.

Ingebretsen's body was discovered about 3:00 p.m. on July 17 in a wooded area near the river. Ingebretsen had suffered 17 different wounds, including blunt force trauma to the head, stab wounds, and a slashing wound to the throat that was so deep it severed a portion of the spine. Several of the wounds could have independently caused death.

After the body was found, law enforcement interviewed defendant again. Ultimately, when defendant learned that his confederate in the murder, Leo Contreras, admitted to the killing and implicated him as well, defendant confessed to some involvement in the murder.

Defendant said he borrowed his father's Lincoln Continental around 8:30 p.m. on July 15. Accompanied by Contreras, defendant drove the Lincoln to Ingebretsen's workplace around 9:00 p.m., when Ingebretsen was scheduled to complete his shift. They called out, "Hey, Erik, come here. Hop in with us." Ingebretsen hopped in the Lincoln, having no reason to be suspicious, as defendant and Contreras were his best friends. Defendant drove to a spot near the river, telling the victim they wanted to show him something.

The three got out of the car and walked about 10 to 15 feet. Contreras hit Ingebretsen in the back of the head with a baseball bat. Ingebretsen fell to the ground unconscious. When he began to move, defendant hit Ingebretsen in the back of the head because Contreras told him to. Defendant stated Contreras then hit Ingebretsen five or six more times. Defendant stated Contreras cut Ingebretsen's neck and stabbed him three or four times.

Defendant told the officers that Ingebretsen owed Contreras money. He assumed it was drug related. After the interview, defendant showed the officers where he and

3

Contreras had been the night of the murder. He showed them where the murder took place and pointed out a bush where he threw his shoes after the murder. Defendant's bloody shoes were recovered from the location he indicated. Defendant showed the officers the hose he used to wash the blood off of Contreras, the bat, and the knife. He took them to a dumpster where the officers recovered a knife and two bloodied shirts.

B. *Conviction, Sentencing, and Appeal*

A jury found defendant guilty of first degree murder (§ 187, subd. (a)) and found he intentionally killed the victim while lying in wait and personally used a deadly weapon (§ 190.2, subd. (a)(15)). The trial court sentenced defendant to an LWOP term. Defendant appealed, and we affirmed the judgment in 1999.

C. *Juvenile Sentencing Law*

The Supreme Courts of the United States and California have issued a series of decisions limiting the types of sentences that may be imposed on juvenile offenders. (See *Roper v. Simmons* (2005) 543 U.S. 551, 575 [161 L.Ed.2d 1, 25] [juveniles not eligible for death penalty]; *Graham v. Florida* (2010) 560 U.S. 48, 82 [176 L.Ed.2d 825, 850] (*Graham*) [juvenile convicted of a nonhomicide offense may not be sentenced to LWOP]; *People v. Caballero* (2012) 55 Cal.4th 262, 268-269 [extending *Graham* to juveniles who receive sentences that are the functional equivalent of LWOP].)

In *Miller*, the United States Supreme Court held that a mandatory LWOP sentence for juvenile offenders violates the Eighth Amendment's prohibition against cruel and unusual punishment. (*Miller*, *supra*, 567 U.S. at pp. 465, 479.) Although *Miller* did not foreclose an LWOP term for juveniles, it noted the "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." (*Id.* at p. 479.) To that end, *Miller* outlined a range of factors a sentencing court should consider before imposing LWOP on a juvenile offender. (*Id.* at pp. 477-479; *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1388-1389 [listing five factors required by *Miller*]; *In re Kirchner* (2017) 2 Cal.5th 1040, 1048 (*Kirchner*) [same].) In *Montgomery v. Louisiana* (2016)

4

577 U.S. 190 [193 L.Ed.2d 599] (*Montgomery*) the Supreme Court held *Miller* operates retroactively because it announced a substantive rule of constitutional law. (*Montgomery*, at pp. ___, ___ [193 L.Ed.2d at pp. 618-620, 622].)

In response to *Miller*, *Graham*, and *Caballero*, our Legislature enacted Senate Bill No. 260 (2013-2014 Reg. Sess.) (Senate Bill 260), which became effective January 1, 2014. Senate Bill 260 provided an offender who was under the age of 18 at the time of his crime with a "youth offender parole hearing" during the 15th, 20th, or 25th year of incarceration, depending on the "controlling offense." (§ 3051, subds. (a) & (b).) At the youth offender parole hearing, the Board of Parole Hearings is directed to "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).) Senate Bill 260 excluded certain categories of offenders, including individuals who were sentenced to LWOP. (Former § 3051, subd. (h).)

The California Supreme Court examined Senate Bill 260 in *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*). The defendant in *Franklin* was 16 years old when he shot and killed another teenager. He was convicted of first degree murder with a firearm enhancement and received a sentence of two consecutive 25-year-to-life terms. (*Id.* at p. 268.) He challenged his 50-year-to-life sentence on the ground it was the functional equivalent of LWOP, arguing that he should be afforded the protections outlined in *Miller*. (*Id.* at p. 273.) The court agreed that "a juvenile may not be sentenced to the functional equivalent of LWOP for a homicide offense without the protections outlined in *Miller*." (*Id*. at p. 276.)

Nonetheless, because Senate Bill 260 entitled the defendant to a parole hearing during his 25th year in prison, his *Miller* challenge was deemed moot. (*Franklin*, *supra*, 63 Cal.4th at pp. 276-277.) The court reasoned that the operation of Senate Bill 260 "means that [the defendant] is now serving a life sentence that includes a meaningful

opportunity for release during his 25th year of incarceration. Such a sentence is neither LWOP nor its functional equivalent. Because [the defendant] is not serving an LWOP sentence or its functional equivalent, no *Miller* claim arises here." (*Id.* at pp. 279-280.)

On October 11, 2017, Senate Bill No. 394 (2017-2018 Reg. Sess.) (Senate Bill 394) became law. Senate Bill 394 expands the youth offender parole hearing process under Senate Bill 260 to juvenile offenders sentenced to LWOP. (Stats. 2017, ch. 684, § 1.5.) To that end, Senate Bill 394 amends section 3051 to add subdivision (b)(4), which provides: "A person who was convicted of a controlling offense that was committed before the person had attained 18 years of age and for which the sentence is life without the possibility of parole shall be eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions."

*People v. Lozano* (2017) 16 Cal.App.5th 1286 (*Lozano*) examined the effect of Senate Bill 394 on a juvenile offender's Eighth Amendment challenge to an LWOP sentence, concluding the *Miller* claim was moot. (*Lozano*, at p. 1288.) It was immaterial that the defendant may have been eligible for parole at an earlier date if she had received her requested sentence. (*Id.* at pp. 1291-1292.) California was free under *Montgomery* to remedy any *Miller* violations by providing, through Senate Bill 394, an opportunity for "meaningful parole consideration" without providing for individual resentencing. (*Lozano*, at p. 1291.)

D. *Section 1170(d)(2)*

"Section 1170, subdivision (d)(2), enacted in 2012 (Stats. 2012, ch. 828, § 1), provides a procedural mechanism for resentencing of defendants who were under the age of 18 at the time of the commission of their offenses and who were given LWOP sentences. If the defendant has served at least 15 years of the LWOP sentence, he or she may 'submit to the sentencing court a petition for recall and resentencing' (§ 1170, subd.

6

(d)(2)(A)(i)), so long as the LWOP sentence was not imposed for an offense in which the defendant tortured the victim or an offense in which the victim was a public safety official (*id.*, subd. (d)(2)(A)(ii)).” (*People v. Willover* (2016) 248 Cal.App.4th 302, 310 (*Willover*).)

“[T]he measure that added subdivision (d)(2) to section 1170, was introduced in the Legislature after *Graham*, but before *Miller*. Like *Graham*, *supra*, 560 U.S. 48, *Miller*, *supra*, 567 U.S. 460, and *Montgomery*, *supra*, 577 U.S. ___ [136 S.Ct. 718], section 1170(d)(2) was inspired by concerns regarding sentences of life without parole for juvenile offenders. [Citation.]” (*Kirchner*, *supra*, 2 Cal.5th at p. 1049.)

“As enacted, section 1170(d)(2) provides an avenue for juvenile offenders serving terms of life without parole to seek recall of their sentences and resentencing to a term that includes an opportunity for parole. . . . In this petition, the defendant must describe his or her remorse, relate his or her work toward rehabilitation, and state that a qualifying circumstance is true. [Citation.] If the court finds by a preponderance of the evidence that one or more of the qualifying circumstances in the petition are true, the court must recall the defendant’s sentence and hold a hearing to resentence the defendant. [Citation.]” (*Kirchner*, *supra*, 2 Cal.5th at pp. 1049-1050.)

“During this hearing, in deciding whether to resentence the defendant to a term of imprisonment with the possibility of parole the court ‘may consider’ factors that ‘include, but are not limited to, the following: [¶] (i) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law. [¶] (ii) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the defendant was sentenced to life without the possibility of parole. [¶] (iii) The defendant committed the offense with at least one adult codefendant. [¶] (iv) Prior to the offense for which the defendant was sentenced to life without the possibility of parole, the defendant had insufficient adult support or supervision and had suffered from psychological or

7

physical trauma, or significant stress. [¶] (v) The defendant suffers from cognitive limitations due to mental illness, developmental disabilities, or other factors that did not constitute a defense, but influenced the defendant's involvement in the offense. [¶] (vi) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, or showing evidence of remorse. [¶] (vii) The defendant has maintained family ties or connections with others through letter writing, calls, or visits, or has eliminated contact with individuals outside of prison who are currently involved with crime. [¶] (viii) The defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor.' (§ 1170, subd. (d)(2)(F).)" (*Kirchner*, *supra*, 2 Cal.5th at p. 1050.)

"In addition, the court may consider 'any other criteria that the court deems relevant to its decision, so long as the court identifies them on the record, provides a statement of reasons for adopting them, and states why the defendant does or does not satisfy the criteria.' (*Id.*, subd. (d)(2)(I).)" (*Kirchner*, *supra*, 2 Cal.5th at p. 1050.)

In *Kirchner*, our Supreme Court disagreed with the appellate court's conclusion that section 1170(d)(2) was an "adequate remedy for *Miller* error" (which conclusion by the appellate court was the basis for a holding that defendant's habeas corpus petition seeking relief for *Miller* error therefore was precluded). (*Kirchner*, *supra*, 2 Cal.5th at pp. 1043, 1052.)

The court explained: "Having originally been developed prior to the decision in *Miller*, the section 1170(d)(2) process was not designed to provide a remedy for this type of error, and it is not well suited to serve this purpose. Instead, the section 1170(d)(2) recall and resentencing process anticipates the lawfulness of a sentence of life without

parole potentially subject to recall under its terms." (*Kirchner*, *supra*, 2 Cal.5th at p. 1052.)

The court further explained that, "[i]n contrast" to the *Miller* inquiry, wherein a trial court "*must* give proper consideration to" five distinct factors,[2] "section 1170(d)(2) provides that when resentencing a defendant a court 'may consider' a set of enumerated factors, which only partially overlap with those identified in *Miller*.  (§ 1170, subd. (d)(2)(F).)  The court also 'may consider any other criteria that the court deems relevant to its decision' (§ 1170, subd. (d)(2)(I))." (*Kirchner*, *supra*, 2 Cal.5th at p. 1054.)

E.  *The Resentencing Petition, Hearing, and Ruling*

In January 2017, defendant filed a petition for recall and resentencing pursuant to section 1170(d)(2).  The People opposed the petition.

In October 2018, after an evidentiary hearing, the trial court resentenced defendant to LWOP, explaining that defendant's conduct in July 1997 was "heinous and despicable" and "anything but impulsive or reckless," and that defendant "remain[ed] calculating, deceitful and dangerous" despite the "vigorous window dressing" displayed at the hearing.

Considering the enumerated factors that section 1170(d)(2)(F) explicitly contemplates, the trial court ruled from the bench as follows:

---

**2**      (1) a juvenile offender's chronological age and its hallmark features — among them, immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the family and home environment that surrounds the juvenile — and from which he cannot usually extricate himself — no matter how brutal or dysfunctional; (3) the circumstances of the homicide offense, including the extent of the juvenile defendant's participation in the conduct and the way familial and peer pressures may have affected him; (4) whether the offender might have been charged and convicted of a lesser offense if not for incompetencies associated with youth — for example, his inability to deal with police officers or prosecutors (including on a plea agreement) or his incapacity to assist his own attorneys; and (5) the possibility of rehabilitation.  (*Kirchner*, *supra*, 2 Cal.5th at p. 1054.)

(i)  The first factor (defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law) was inapplicable.

(ii)  Regarding the second factor (juvenile felony adjudications for crimes with a significant potential for personal harm prior to the murder), the trial court found it "true that [defendant] does not have such a record."  But the trial court explained that defendant's own testimony at the resentencing hearing "ma[de] clear that [defendant] should have had such a record, but for the fact that he was not apprehended for the apparently numerous acts of vandalism, arson, burglary, and other crimes" he committed before murdering Ingebretsen.

(iii)  The third factor (defendant committed the offense with at least one adult codefendant) was true, as Contreras was 19 years old at the time of the murder.  But the trial court explained that it gave "little weight to this factor as one in the defendant's favor," because, at the resentencing hearing, defendant "attempt[ed] to shift blame to" Contreras "and minimize his own role by characterizing himself as a mere acolyte who was under the sway of older boys whose approval he desperately needed," despite the admission "that he would have suffered little, if any, consequence" for refusing to participate in the murder.

The trial court also cited (a) defendant's "extensive planning of the crime and coverup," and (b) Contreras's "small stature in retiring character" as additional considerations regarding why it afforded little weight to this factor.

(iv)  The trial court found the fourth factor (defendant had insufficient adult support or supervision and had suffered from psychological or physical trauma, or significant stress prior to the murder) did not apply, as there was "no convincing evidence" for defendant's claim that he had "a cold, unnurturing home life punctuated by an undisclosed period of sexual abuse by an unnamed family friend."  The trial court noted that prior to the resentencing hearing, defendant "had consistently denied any sexual abuse, and . . . described his home life as idyllic."  Accordingly, the trial court

10

concluded that defendant's "recent inventions" regarding this factor, were "designed to bolster" defendant's resentencing petition.

(v)  The trial court did not address the fifth factor (that defendant suffers from cognitive limitations due to mental illness, developmental disabilities, or other factors that did not constitute a defense, but influenced the defendant's involvement in the offense).

(vi)  The sixth factor is "[t]he defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse."  (§ 1170(d)(2)(F)(vi).)

Acknowledging the "extensive testimony and considerable documentation . . . presented to demonstrate" defendant's rehabilitation, the trial court nevertheless concluded this factor did not weigh in favor of a reduced sentence, because "defendant's prison record continued to show violence and defiance" up to and including a "2011 attack on his cellmate."

The trial court further explained that a defense psychologist who testified "was highly selective in the data points she chose to buttress her conclusions," while "tend[ing] to mitigate or excuse negatives in defendant's prison record."

And the trial court observed that defendant "admitted to lying to the retained defense psychologist as recently as 2017" about "significant matters,"[3] and that the

---

[3]  It appears the trial court was referring to defendant's testimony on cross-examination at the hearing that he lied in 2017 when he told the psychologist:  (a) he had not been physically, sexually or emotionally abused as a child, (b) he did not have a motive for killing Ingebretsen, and (c) he did not plan to kill Ingebretsen when he and Contreras invited Ingebretsen into defendant's car.

expert's conclusions regarding defendant's amenability to rehabilitation were "in part, based on testing . . . to detect deception."

"[D]efendant remains calculating, deceitful and dangerous and . . . his potential for actual rehabilitation as opposed to vigorous window dressing is dubious," the trial court concluded.

(vii)  The trial court found the seventh factor (defendant has maintained family ties or connections with others) applied in defendant's favor.

(viii)  The trial court found the eighth factor (defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor) applied in defendant's favor, but "[w]hen measured against the totality of defendant's horrific calculated crime against his childhood best friend, the deception in covering the crime, [an] incredibly violent first decade in prison, his continued lying and deception . . . to bolster his petition for resentencing, the relative peace of the last five years is of little significance."

Before making its section 1170(d)(2)(F) findings, the trial court made two threshold determinations:  (1) whether to grant probation, and (2) whether — under *Miller* — defendant was "that rare juvenile offender whose crime reflects irreparable corruption."

Explaining its decision not to grant probation, the trial court said it "doubted" the "genuineness of th[e] remorse" that defendant expressed at the resentencing hearing. "Even in his address to the victim's family [defendant's] words appeared rehearsed and contrived with little more than the phraseology of someone well-versed in the jargon of prison rehabilitation . . . ."

Explaining why defendant "remain[ed] subject to imposition of LWOP" because of irreparable corruption, the trial court said, "few adults" would be "so self-possessed or as coldly calculating" as defendant was when he "participated in . . . search efforts launched to locate the victim and . . . pretended concern and extended false comfort to the

12

victim's family all in an attempt to cover his tracks." "There was nothing reckless, impulsive or heedless in the defendant's actions, and it does not appear that his young age or lack of maturity presents any mitigation of his culpability," the trial court found.

Defendant appealed the trial court's ruling.

DISCUSSION

Defendant argues the trial court abused its discretion (1) in finding him subject to an LWOP term due to irreparable corruption, and (2) under section 1170(d)(2). Regarding the irreparable corruption finding, defendant contends the trial court "completely ignor[ed] the extensive evidence of [defendant's] rehabilitation after the crime." Regarding the section 1170(d)(2) analysis, defendant contends the trial court "improperly analyzed" the section 1170(d)(2)(F) criteria.

The People argue as a threshold matter that defendant's appeal is moot because he "is not serving an LWOP term," in light of section 3051, subdivision (b)(4). On the merits, the People argue the trial court did not abuse its discretion when making an irreparable corruption finding, and when considering the section 1170(d)(2)(F) factors.

We conclude defendant's first argument is moot in light of *Franklin*, and defendant's second argument is unpersuasive.

A. *The Constitutional Claim is Moot*

In light of *Franklin*, defendant is no longer serving an LWOP sentence, disposing of his *Miller* claim. (*Franklin*, *supra*, 63 Cal.4th at pp. 279-280.)

Senate Bill 394 amended section 3051 to expressly provide that a person in defendant's situation is entitled to a youth offender parole hearing after 25 years of incarceration. (Stats. 2017, ch. 684, § 1.5; § 3051, subd. (b)(4).) This change applies retrospectively to all eligible youth offenders regardless of the date of conviction. (See *Franklin*, *supra*, 63 Cal.4th at p. 278.)

Thus, Senate Bill 394 effectively provides defendant the relief he sought at resentencing, the least severe term for which he was eligible upon resentencing: 25 years

13

to life.  (§ 190.5, subd. (b).)  Thus, defendant's *Miller* claim is moot.  (See *Lozano, supra*, 16 Cal.App.5th at pp. 1288, 1290.)

B.  *The Statutory Claim is Unpersuasive*

*Kirchner* teaches that the section 1170(d)(2) resentencing process "was not designed to provide a remedy" for *Miller* error, and "is not well suited to serve this purpose."  (*Kirchner*, *supra*, 2 Cal.5th at p. 1052.)  Thus, though defendant's claim of *Miller* error is mooted, his statutory claim is not.  But defendant's statutory challenge *is* moot to the extent that defendant imports a *Miller* analysis into his statutory challenge. (See *In re Cook* (2019) 7 Cal.5th 439, 456 ["in *Kirchner*, both the express language and legislative intent behind section 1170(d)(2) were so specific as to *preclude* an effective *Miller* resentencing"]; *People v. Gibson* (2016) 2 Cal.App.5th 315, 331 [a § 1170(d)(2) petition "is not a vehicle for reconsidering the constitutionality of a sentence" in light of *Miller*].)

"A trial court abuses its sentencing discretion when its decision is arbitrary or capricious, inconsistent with the letter and spirit of the law, or based on 'circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.'  [Citation.]  When the sentencing decision involves an assessment of various factors, the trial court has discretion to accord different weight to each factor, and its decision need not be determined by the sheer number of factors on one side or the other. Rather, the trial court's exercise of its sentencing discretion 'requires "[a] quantitative and *qualitative* analysis" of multiple factors.  [Citation.]'  [Citation.]"  (*Willover*, *supra*, 248 Cal.App.4th at p. 323.)

Regarding subdivision (F)(ii) (juvenile felony adjudications for crimes with a significant potential for personal harm prior to the murder), defendant suggests the trial court erred when it indicated that defendant *should have had* a record of qualifying juvenile felony adjudications, as it was "unknown whether" the acts that defendant

admitted — including setting fire to "a Hindu place of worship" — posed a significant potential for personal harm to victims.

Given defendant's admission at the resentencing hearing, the trial court's conclusion that — though defendant did not have juvenile felony adjudications — the factor *did not weigh in favor* of a reduced sentence and was not an abuse of discretion, as arson "is recognized as an inherently dangerous felony — i.e., one which inherently poses a substantial risk, not just of injury but of death — as a matter of law" (*People v. Baker* (2012) 204 Cal.App.4th 1234, 1247) and the trial court had discretion regarding the *weight it afforded* to this factor when it conducted the section 1170(d)(2)(F) analysis (*Willover*, *supra*, 248 Cal.App.4th at p. 323).

Regarding the factor set forth in subdivision (F)(iii) (defendant committed the offense with at least one adult codefendant), defendant suggests the trial court erred by giving "little weight" to this factor (due to defendant's roles in planning the murder and the attempted cover-up, and defendant's admission he could have refused to participate in the murder with little consequence) because "[t]here is a big difference between being 16 years old and being with an accomplice who is 19 years old."

The trial court's determination that this factor was true but of little weight in the overall qualitative resentencing analysis was not an abuse of discretion, as the record supports the trial court's reasoning that defendant was not acting under the influence of Contreras when he murdered Ingebretsen. (*Willover*, *supra*, 248 Cal.App.4th at p. 321 [no abuse of discretion in determining the factor set forth in subd. (F)(iii) did not weigh in favor of a reduced sentence, as the record supported the trial court's finding that defendant was not acting under the influence of an adult and "the Legislature was concerned about juveniles who were sentenced to LWOP for crimes they committed while ' "acting under the influence of an adult" ' "].)

Regarding the factor set forth in subdivision (F)(vi) (defendant performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited

15

to, availing himself or herself of rehabilitative, educational, or vocational programs, if those programs have been available at his or her classification level and facility, using self-study for self-improvement, *or showing evidence of remorse*), defendant argues the trial court "unreasonably discounted" the evidence in favor of this factor, and "dismiss[ed] all of [defendant's] rehabilitative activities . . . as a sham."

The trial court's determination that *despite* "extensive testimony and considerable documentation . . . presented to demonstrate" defendant's rehabilitation, this factor did not weigh in favor of a reduced sentence was not an abuse of discretion, because the trial court's determination rested on: (a) defendant's apparent *continued dishonesty*, given (i) his admissions at the resentencing hearing that he lied to the retained defense psychologist in 2017 that he neither had a motive for killing Ingebretsen nor planned to kill him, three "significant matters" according to the trial court, and (ii) his demeanor at the hearing, when he *disingenuously expressed remorse* to Ingebretsen's family (see *People v. Gibson*, *supra*, 2 Cal.App.5th at pp. 328-329 ["trier of fact could reasonably conclude that defendant's efforts were not reflective of genuine remorse or rehabilitation"]; *People v. Koontz* (2002) 27 Cal.4th 1041, 1090 ["assessments of credibility are an inescapable part of the trier of fact's duty"]; *People v. Scott* (2011) 52 Cal.4th 452, 493 ["a witness's 'demeanor is always relevant to credibility' "]; *People v. Lewis* (2001) 26 Cal.4th 334, 359 [giving "proper deference" to a credibility finding, because "reviewing court[s] . . . confront a cold record without the trial court's benefit of observing firsthand the appearance and demeanor of the witness"]); and, (b) the trial court's view of the relatively limited value of a defense expert witness's evidence (cf. *People v. Sedillo* (2015) 235 Cal.App.4th 1037, 1069 [the trial court's assessment of an expert witness's credibility was not an abuse of discretion]).

As for the factor set forth in subdivision (F)(viii) (defendant has had no disciplinary actions for violent activities in the last five years in which the defendant was determined to be the aggressor), defendant says the trial court "begrudgingly noted that"

defendant "met this factor." Defendant appears to argue that it was error for the trial court to afford "little significance" to this factor in light of the trial court's consideration of defendant's "horrific calculated crime against his childhood best friend, the deception in covering the crime, [an] incredibly violent first decade in prison, [and] his continued lying and deception . . . to bolster his petition for resentencing."

The trial court's determination that this factor was true but of little weight in the overall qualitative resentencing analysis was not an abuse of discretion, as the trial court was not obliged merely to conduct a binary "yes/no" analysis whether a specific factor was true, but was permitted to consider the weight of this factor *in light of circumstances of defendant's crime*. (See *Willover*, *supra*, 248 Cal.App.4th at p. 323 [the trial court's § 1170(d)(2) decision "need not be determined by the sheer number of factors on one side or the other"; § 1170(d)(2)(F) "specifies that the trial court is not restricted to a consideration of the enumerated factors," thereby allowing a consideration of " 'the circumstances of the homicide offense' "].)

Defendant does not discuss the trial court determination as to the factor set forth in subdivision (F)(iv)[4] and does not assign error to the trial court's determination as to the factor set forth in subdivision (F)(vii).[5]

We find no abuse of discretion in the trial court's determination that four favorable factors — (1) the absence of juvenile felony adjudications (subd. (F)(ii)), (2) the commission of the murder with an adult (who was 19 years old) (subd. (F)(iii)), (3) the maintenance of family ties (subd. (F)(vii)), and (4) the absence of disciplinary actions for

---

[4] That defendant did not have "insufficient adult support or supervision," despite "recent inventions" of claims of an "unnurturing home life punctuated by an undisclosed period of sexual abuse," which were "designed to bolster" defendant's resentencing petition.

[5] That defendant *did* maintain family ties.

17

violent activities in prison in the five years before the filing of the petition (subd. (F)(viii)) — did not outweigh the other relevant factors, including the circumstances of the offense and defendant's continued dishonesty.[6] (See *Willover*, *supra*, 248 Cal.App.4th at p. 323 [no abuse of discretion in the trial court's determination that four favorable statutory factors did not outweigh the other relevant factors, including the circumstances of the offense].)

Thus, it was not unreasonable or arbitrary for the trial court to resentence defendant to an LWOP term.

C. *Proposition 57*

"On November 8, 2016, the electorate passed Proposition 57, and it took effect the next day. [Citation.]" (*People v. Superior Court (Lara)* (2018) 4 Cal.5th 299, 304 (*Lara*).) " 'Among other provisions, Proposition 57 amended the Welfare and Institutions Code so as to eliminate direct filing by prosecutors. Certain categories of minors . . . can still be tried in criminal court, but only after a juvenile court judge conducts a transfer hearing to consider various factors such as the minor's maturity, degree of criminal sophistication, prior delinquent history, and whether the minor can be rehabilitated.' [Citations.]" (*Id*. at p. 305.) "Only if the juvenile court transfers the matter to adult court can the juvenile be tried and sentenced as an adult. [Citation.]" (*Id.* at p. 303.)

---

**6** Further, any conceivable error by the trial court either in making discrete section 1170(d)(2)(F) findings or in weighing those factors was harmless, because in light of the trial court's emphasis of defendant's dishonesty and the "horrific calculated crime against his childhood best friend" we see no reasonable probability the trial court would impose a different sentence on remand. (See Cal. Const., art. VI, § 13 [no judgment should be set aside for harmless error]; § 1170(d)(2)(I) [the court "may consider any other criteria that the court deems relevant to its decision"]; *People v. Coelho* (2001) 89 Cal.App.4th 861, 889 [it would be an "idle act" to remand for resentencing if it is not reasonably probable the court would impose a different sentence].)

18

"While Proposition 57's transfer hearing is similar in some respects to the fitness hearing conducted prior to the 1999 and 2000 amendments, there are key differences. Notably, under prior law, juveniles age 16 or older who were accused of certain offenses, including murder, were subject to a rebuttable presumption that they were unfit for juvenile court treatment. [Citation.] No such presumption applies in transfer hearings under Proposition 57, and the People have the burden to show that the juvenile should be treated as an adult. [Citations.] In addition, in fitness hearings under prior law, a juvenile court could retain jurisdiction over a juvenile age 16 or older accused of certain offenses, including murder, only if it found the individual suitable for juvenile court treatment under each of five criteria. [Citation.] In a transfer hearing under current law, the court must consider those five criteria, but has broad discretion in applying them, and need not find that all five support juvenile court treatment. [Citations.]" (*People v. Padilla* (2020) 50 Cal.App.5th 244, 249-250, fn. omitted (*Padilla*), review granted August 26, 2020, S263375.)

Defendant filed his section 1170(d)(2) petition in January 2017, after the effective date Proposition 57 went into effect. He contends in a supplemental brief that the trial court was required to transfer the case to the juvenile court for compliance with Proposition 57.[7]

Under the rule of *In re Estrada* (1965) 63 Cal.2d 740, Proposition 57 applies retroactively, but only to those cases that are not yet final. (*Lara, supra*, Cal.5th at pp. 303-304.) Whether Proposition 57 apples to a juvenile convicted in adult court who later collaterally attacks a final conviction is currently before the California Supreme Court.

---

[7] Defendant's failure to raise this issue in the proceedings below does not forfeit his claim, which goes to the trial court's fundamental jurisdiction over his case. (See *People v. Lara* (2010) 48 Cal.4th 216, 224-225 [fundamental jurisdiction may be raised for the first time on appeal].) In addition, addressing the merits of defendant's claim has the benefit here of avoiding a claim of ineffective assistance of counsel.

19

The parties here each rely on one of two cases reaching opposite conclusions, *Padilla* and *People v. Federico* (2020) 50 Cal.App.5th 318, 326, review granted August 26, 2020, S263082.

*Padilla* involved a habeas petitioner who was convicted of a murder committed when he was 16 years old and sentenced to LWOP in 1999. (*Padilla, supra,* 50 Cal.App.5th at pp. 246-247.) After his conviction was final, Padilla filed a habeas petition asking to be resentenced under *Miller*. (*Id.* at p. 248.) The trial court granted the petition and resentenced him to LWOP. (*Ibid.*) The Court of Appeal reversed the trial court and remanded for reconsideration in light of *Montgomery*. (*Ibid.*) Proposition 57 took effect while the matter was pending in the trial court on remand. (*Padilla,* at p. 248.) The trial court reimposed the LWOP term on remand, and on appeal, Padilla sought transfer to the juvenile court under Proposition 57. (*Padilla,* at p. 248.)

Relying on *People v. Jackson* (1967) 67 Cal.2d 96, the Court of Appeal held that "a collateral proceeding may reopen the finality of a sentence for retroactivity purposes, even while the conviction remains final." (*Padilla, supra*, 50 Cal.App.5th at p. 253.)[8] It found the petitioner's sentence was no longer final as it had been vacated by the habeas court, and, even if all matters not encompassed by resentencing were still final like the finding of guilt in *Jackson*, Proposition 57 nonetheless applied to his resentencing because a juvenile court disposition would be more advantageous to petitioner than sentencing as an adult for the criminal offense. (*Padilla,* at pp. 253-254.) "Because Proposition 57's primary ameliorative effect is on a juvenile offender's sentence, independent of the convictions, we conclude it applies retroactively to appellant's

---

[8] The California Supreme Court held in *Jackson* that capital defendant who obtained a new penalty trial on habeas may not attack the underlying conviction on remand but can challenge the reimposition of the death penalty based on new Supreme Court decisions. (*People v. Jackson, supra*, 67 Cal.2d at pp. 98-99.)

20

nonfinal sentence and requires that he receive a transfer hearing. [Citations.]" (*Id.* at p. 255, fn. omitted.) The Court of Appeal found this was "consistent with our Supreme Court's determination in *Lara* that the voters intended Proposition 57 ' "to extend as broadly as possible" ' (*Lara, supra*, 4 Cal.5th at p. 309), i.e., 'to every case to which it constitutionally could apply' (*Estrada, supra*, 63 Cal.2d at p. 745)." (*Padilla*, at p. 256.)

*Federico* involved a case procedurally more similar to the case before us. In 2008, the defendant in *Federico* was convicted of assault with a firearm with various enhancements and sentenced to a 20-year state prison term. (*Federico, supra*, 50 Cal.App.5th at p. 322.) In September 2018, the Secretary of the Department of Corrections and Rehabilitation sent a letter to the trial court providing it with the authority to recall the sentence pursuant to section 1170(d)(1) based on authority subsequent to his conviction that rendered the sentence unauthorized. (*Federico,* at p. 322.)[9] The defendant responded with a motion agreeing his sentence was unauthorized and asking the trial court to remand the case to the juvenile court for proceedings under Proposition 57. (*Federico,* at p. 322.) The trial court found Proposition 57 inapplicable and resentenced defendant to a 17-year term. (*Federico,* at p. 323.)

The Court of Appeal affirmed. (*Federico, supra*, 50 Cal.App.5th at p. 321.) It found *Lara* was inapplicable to defendant because his conviction became final when the time to appeal from his original conviction and sentence had passed, long before Proposition 57 went into effect. (*Federico,* at p. 325.) The fact that the defendant could appeal the resentencing decision did not deprive the original judgment of its finality. (*Id.* at pp. 325-326.) The *Federico* court found "even if a trial court has authority to recall a

---

[9] At any time following the recommendation of the Secretary of the Department of Corrections and Rehabilitation or certain other officers, the trial court may "recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if they had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence." (§ 1170(d)(1).)

sentence under section 1170, subdivision (d), it does not follow that the sentence is not a final judgment under *Estrada*." (*Id.* at p. 326.) It noted that section 1170(d)(1) was an exception to the general rule that a court loses jurisdiction to resentence the defendant once the sentence begins, and it does not address reopening a judgment to apply recently enacted changes in the law. (*Federico*, at pp. 326-327.) Allowing the Proposition 57 hearing was inconsistent with the text of section 1170(d), which "specifically provides that the court may '*resentence* the defendant in *the same manner* as if he or she had not previously been sentenced.' [Citation.]" (*Federico*, at p. 327.) Finally, the full resentencing rule of *People v. Buycks* (2018) 5 Cal.5th 857 was inapplicable as, unlike *Buycks*, the case in *Federico* did not involve Proposition 57 resentencing. (*Federico,* at p. 328.)[10]

Published decisions subsequent to *Federico* and *Padilla* have found *Padilla* to be the better reasoned of the two decisions. (See, e.g., *People v. Hwang* (2021) 60 Cal.App.5th 358, 366-367, review granted Apr. 14, 2021, S267274 [following *Padilla* and noting contra authority of *Federico*]; *People v. Lopez* (2020) 56 Cal.App.5th 835, 845, review granted Jan. 27, 2021, S265936 [rejecting *Federico* and following *Padilla*].) We agree. "In a criminal case, judgment is rendered when the trial court orally pronounces sentence. [Citations.]" (*People v. Karaman* (1992) 4 Cal.4th 335, 344, fn. 9.) Recall and resentencing under section 1170(d)(2) renders the judgment (at least for the purpose of sentencing) no longer final.[11] Proposition 57, which, under *Lara* and

---

**10**    *Buycks* held that "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' [Citations.]" (*People v. Buycks, supra*, 5 Cal.5th at p. 893.)

**11**    We need not, and decline to, determine whether a defendant could use section 1170(d)(2) or another recall of sentence procedure to collaterally attack the conviction underlying the sentence. (See *People v. Clark* (2017) 8 Cal.App.5th 863, 875

*Estrada*, applies to sentences that were not final when it took effect, therefore applies to defendant's case.

"The appropriate remedy is a remand to the trial court with directions for the matter to be transferred to the juvenile court for a juvenile adjudication. [Citation.]" (*People v. Hwang, supra*, 60 Cal.App.5th at p. 367.)

## DISPOSITION

Defendant's sentence is conditionally reversed. The matter is remanded to the trial court with directions to refer the case to the juvenile court for a transfer hearing, to determine if it would have transferred the case to adult criminal court had it originally been filed in juvenile court in accordance with current law. If the juvenile court determines it would not have transferred the matter to the criminal court, it shall treat defendant's convictions as juvenile adjudications and impose an appropriate disposition. If the juvenile court determines it would have transferred defendant to adult criminal court, it shall transfer the case to the trial court, which shall then reinstate the sentence it imposed at the section 1170(d)(2) hearing.

        /s/
        BLEASE, J.


We concur:


    /s/
RAYE, P. J.


    /s/
ROBIE, J.

---

[resentencing provision of Prop. 36, § 1170.126 does not authorize collateral attack on prior strike conviction].)

23