Filed 3/5/25  P. v. Hitchcock CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ERICA HITCHCOCK,<br><br>    Defendant and Appellant. | B334496<br><br>(Los Angeles County<br>Super. Ct. No. SA046967) |

APPEAL from an order of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed.

Sarah M. Javaheri, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A court sentenced Erica Hitchcock to a prison term of 40 years to life for a crime committed when she was a juvenile. Having served 15 years of her sentence, Hitchcock petitioned for recall and resentencing under Penal Code[1] section 1170, subdivision (d), which, on its face, applies only to juveniles sentenced to explicit life without parole. The trial court denied the petition on the ground Hitchcock was not sentenced to explicit life without parole or its functional equivalent.

On appeal, Hitchcock contends her sentence is the functional equivalent of life without parole. As such, Hitchcock further contends that denying section 1170, subdivision (d), relief violates her constitutional guarantee to equal protection. *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*) considered this issue in part and agreed that excluding juvenile offenders sentenced to the functional equivalent of life without parole from relief under the law violates equal protection. (Accord, *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*).) Although we agree with *Heard*, we do not agree that a 40-years-to-life sentence is functionally equivalent to life without parole. Accordingly, we affirm the trial court's order.

## BACKGROUND

In 2002, Tiffany Scott's body was found on a Santa Monica beach. (*People v. Hitchcock* (Apr. 13, 2006, B179692) [nonpub. opn.].)[2] She had been shot in the head. The night Scott was

---

[1]     All further undesignated statutory references are to the Penal Code.

[2]     We take judicial notice of that opinion. (Evid. Code, § 451, subd. (a).)

2

killed, witnesses saw two people running from the beach. Hitchcock later told M.F. that she and Kristopher Bean, who used to date Scott, shot Scott. (*Ibid.*) Hitchcock and Bean later denied to investigators that they shot Scott, saying instead that a third man shot her.

In 2004, a jury convicted Hitchcock of second degree murder (§ 187, subd. (a)) and found true a personal firearm use allegation (§ 12022.53, subd. (d)). That same year, the trial court sentenced Hitchcock to 15 years to life for the murder plus 25 years to life for the firearm enhancement, for a total prison term of 40 years to life.

In 2023, Hitchcock petitioned for recall and resentencing under section 1170, subdivision (d). Citing *Heard, supra*, 83 Cal.App.5th 608, Hitchcock argued that she had been sentenced to the functional equivalent of life without parole. She further stated that she was 17 years old when she committed her crime, she had been incarcerated for more than 15 years, and she had no disqualifying circumstances. The People opposed the petition on the ground that Hitchcock had neither been sentenced to life without parole nor to its functional equivalent.

On September 26, 2023, the trial court denied the petition, finding that a 40-years-to-life sentence for a 17 year old is not the functional equivalent of life without parole. The trial court observed that Hitchcock will be eligible for a youth offender parole hearing "or even just regular parole in a time when she still has life expectancy."

This appeal followed.

# DISCUSSION

Section 1170, subdivision (d), allows juveniles sentenced to life without parole to petition for recall and resentencing. Hitchcock, who was not sentenced to explicit life without parole, contends she was sentenced to its functional equivalent. As such, she further contends that denying her relief under section 1170, subdivision (d), violates her constitutional right to equal protection. The Attorney General does not dispute that juveniles sentenced to the functional equivalent of life without parole are entitled to section 1170, subdivision (d), relief but does dispute that 40-years-to-life is such a sentence. We agree with the Attorney General. Accordingly, denying section 1170, subdivision (d), relief to Hitchcock did not violate her equal protection rights.

## I.    Equal protection principles

No state may "deny to any person within its jurisdiction the equal protection of the laws" under the federal constitution's equal protection clause. (U.S. Const., 14th Amend.; accord Cal. Const., art. I, § 7.) The equal protection clause thus directs that all similarly situated persons be treated alike. (*People v. Hardin* (2024) 15 Cal.5th 834, 847 (*Hardin*).) " 'At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification.' " (*Ibid.*)

Where, as here, the challenge is to a law "drawing distinctions between identifiable groups or classes of persons, on the basis that the distinctions drawn are inconsistent with equal protection," the "only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review." (*Hardin, supra*, 15 Cal.5th at pp. 850–851.) Further, where the challenged law is not based on

4

a suspect classification such as race or gender, we apply a rational basis review, sustaining the classification if it is rationally related to a legitimate state interest.  (*Ibid.*)  Only if there is no rational relationship between a disparity in treatment and some legitimate government purpose will an equal protection violation be found.  (*People v. Turnage* (2012) 55 Cal.4th 62, 74.)  "This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny.  Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair."  (*People v. Chatman* (2018) 4 Cal.5th 277, 289.)

The party challenging the law has the burden of showing that the challenged difference in treatment is not adequately justified under the applicable standard of review.  (*Hardin*, *supra*, 15 Cal.5th at p. 851.)

## II.    Section 1170, subdivision (d), and legal framework

The Legislature enacted section 1170, subdivision (d), against the backdrop of an evolution in how we understand and treat juvenile and youth offenders.  The United States Supreme Court thus held in *Graham v. Florida* (2010) 560 U.S. 48 (*Graham*) that the Eighth Amendment prohibits life without parole sentences for juvenile nonhomicide offenders.  In response to *Graham*, our California Legislature enacted section 1170, subdivision (d), to give juveniles sentenced to life without parole the opportunity to petition for recall and resentencing to a term with parole.  (See generally *In re Kirchner* (2017) 2 Cal.5th 1040, 1049–1050.)

5

Under section 1170, subdivision (d), a defendant who was under 18 years old when committing a crime for which the defendant was sentenced to life without parole may petition the sentencing court for recall and resentencing after having been incarcerated for at least 15 years.  The defendant must include a statement describing the defendant's remorse and work toward rehabilitation and asserting that one of the following is true: (A) The defendant was convicted pursuant to felony murder or aiding and abetting murder, (B) the defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall, (C) the defendant committed the offense with at least one adult codefendant, or (D) the defendant has performed acts indicating rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse.  (§ 1170, subd. (d)(2)(A)–(D).)  If the court finds by a preponderance of the evidence any of the statements in section 1170, subdivision (d)(2)(A) to (D) true, the trial court "shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subd. (d)(5).)  The statute lists contributing factors to consider at resentencing.  (§ 1170, subd. (d)(8) & (11).)

Courts of appeal, including this division in *Sorto*, have held that section 1170, subdivision (d), applies to juveniles sentenced to the functional equivalent of life without parole.  In *Heard*, *supra*, 83 Cal.App.5th at page 612, the juvenile defendant had

been sentenced to 23 years plus 80 years to life for crimes committed when he was 15 years old.  The juvenile defendant in *Sorto*, *supra*, 104 Cal.App.5th at page 440, had been sentenced to a determinate term of 10 years plus an indeterminate term of 130 years to life for crimes committed when he was 15 years old.  In both cases, the trial courts denied section 1170, subdivision (d), petitions on the ground the statute is limited to juveniles sentenced to explicit life without parole.

*Heard* and *Sorto* agreed that the statute on its face is limited to juveniles sentenced to explicit life without parole but concluded nonetheless that its exclusion of juveniles sentenced to functionally equivalent life without parole sentences violated the constitutional guarantee to equal protection.  (*Heard*, *supra*, 83 Cal.App.5th at p. 632; *Sorto*, *supra*, 104 Cal.App.5th at p. 454; accord, *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1046 [107-years-to-life sentence on 15 year old was functional equivalent to life without parole].)  In so holding, *Heard* and *Sorto* rejected, among other arguments, that section 3051 avoided any equal protection problem.  Section 3051 entitles a defendant convicted of a controlling offense committed when the person was 25 years of age or younger, and for which the sentence is 25 years to life, to a youth offender parole hearing in the 25th year of incarceration.  Even so, that section does not "reform[ ]" a defendant's sentence such that it is no longer a de facto life without parole sentence.  (*Heard*, at p. 628.)  The courts distinguished *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*), which held that due to section 3051's retroactive operation, juvenile defendants serving a sentence of 50 years to life were no longer serving life without parole sentences.  (*Heard*, at p. 629.)  Section 1170, subdivision (d)(1)(A), only requires that

7

the defendant "*was sentenced*" to life without parole; the section does not require that the defendant *currently* be serving such a sentence. (*Heard*, at pp. 629–630; accord, *Sorto*, at p. 448.) "Accordingly, the fact that section 3051 superseded Sorto's sentence is irrelevant. Instead, it is enough that he 'was sentenced' to the functional equivalent" of life without parole. (*Sorto*, at p. 448.)

*Heard* and *Sorto* thus concluded that treating juvenile offenders sentenced to de facto life without parole differently from ones sentenced to explicit life without parole violates equal protection.

Although the Attorney General had originally argued that *Heard* was wrongly decided, it has withdrawn that argument in light of *Sorto*. The Attorney General now agrees that section 1170, subdivision (d), violates equal protection to the extent it limits relief to juvenile offenders sentenced to explicit life without parole. Further, the Attorney General does not dispute that a "50-years-to-life sentence for a juvenile offender is the functional equivalent of a [life without parole] sentence for purposes of equal protection, as well as the Eighth Amendment."

We have no occasion here to decide whether a 50-years-to-life sentence is functionally equivalent to explicit life without parole. Nor do we need to decide whether functional equivalence in sentencing is the same in the Eighth Amendment and equal protection contexts. Instead, we will assume without deciding that they are and conclude, in any event, that Hitchcock's equal protection rights were not violated. Hitchcock was sentenced to 40-years-to-life, and the Attorney General does not agree that

such a sentence is the functional equivalent of life without parole.[3]  We therefore address that precise and limited issue.

III.    Forty years to life is not functionally equivalent to life without parole

Hitchcock contends she is entitled to be resentenced under section 1170, subdivision (d), because her 40-years-to-life sentence is equivalent to life without parole.  We do not agree.

Our California Supreme Court has yet to address what is the uppermost sentence that can constitute a de facto life without parole sentence in the context of equal protection and section 1170, subdivision (d).  However, *Franklin, supra,* 63 Cal.4th 261 and *People v. Contreras* (2018) 4 Cal.5th 349 (*Contreras*) provide some guidance.

In *Franklin, supra,* 63 Cal.4th at page 268, the 16-year-old defendant was sentenced to 50 years to life but was entitled to parole consideration after 25 years under section 3051.  The court held that the defendant's de facto sentence of 25 years to life was not the functional equivalent of life without parole.  (*Franklin,* at p. 279.)  *Franklin* thus suggests that any sentence of 25 years to life or less is *not* functionally equivalent to life without parole.

Next, *Contreras, supra,* 4 Cal.5th 349, could be interpreted to suggest a ceiling on what sentence *is* the functional equivalent to life without parole, at least in the case of nonhomicide offenses. That case involved two 16 year olds, one sentenced to 50 years to

---

[3]     Finding their initial briefing on this issue inadequate, we directed the parties to submit supplemental briefing.

life and the other to 58 years to life for nonhomicide offenses.[4] (*Id.* at p. 356.)  The defendants contended that their sentences violated the Eighth Amendment under *Graham* and *People v. Caballero* (2016) 55 Cal.4th 262, the latter of which held that a 110-years-to-life sentence for a nonhomicide juvenile offender was a de facto life without parole sentence and, as such, violated the Eighth Amendment.

In addressing whether the juveniles' sentences violated the Eighth Amendment, *Contreras*, *supra*, 4 Cal.5th at pages 360 to 364, rejected an actuarial approach that would uphold any sentence so long as the juvenile had an opportunity for parole within the juvenile's expected lifetime.  Instead, any approach to the issue had to be grounded in *Graham*'s observations about why we treat juvenile offenders differently for sentencing purposes by affording them a " 'meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation.' " (*Contreras*, at p. 367.)  Per *Graham*, a lawful sentence must recognize " 'a juvenile nonhomicide offender's capacity for change and limited moral culpability;' "  "offer 'hope of restoration,' " " 'a chance to demonstrate maturity and reform,' " a " 'chance for fulfillment outside prison walls,' " and "a 'chance for reconciliation with society' "; "offer 'the opportunity to achieve maturity of judgment and self-recognition of human worth and potential' "; and "offer the juvenile offender an 'incentive to become a responsible individual.' " (*Contreras*, at p. 367.)

---

[4]    Because they were sentenced under the One Strike law, they were ineligible for a section 3051 youth offender parole hearing.  (*Contreras*, *supra*, 4 Cal.5th at p. 359.)

*Contreras* concluded that a 50-years-to-life sentence would not allow a juvenile offender to rejoin society for a "sufficient period to achieve reintegration as a productive and respected member of the citizenry." (*Contreras*, *supra*, 4 Cal.5th at p. 368.) Returning the defendant to society in his late sixties or early seventies also would not incentivize him to change going forward, and such a sentence has an attenuated relationship to any penological goals for nonhomicide offenders. Further, a conclusion that 50 years to life is functionally equivalent to life without parole is consistent with conclusions other states have reached. (*Id.* at pp. 368–369.)

Assuming without deciding that *Contreras*'s analysis under the Eighth Amendment applies to the equal protection context, *Contreras* is distinguishable, as are *Heard* and *Sorto*. The *Contreras* defendants faced potential release from prison in their late sixties or into their seventies. The *Heard* and *Sorto* defendants could not obtain release from prison within their natural life expectancies given the extreme length of their sentences (23 years plus 80 years to life for Heard and 10 years plus 130 years to life for Sorto). In contrast, Hitchcock will be about 57 years old when she is eligible for regular parole. Release at that age—a full decade earlier than the *Contreras* defendants—provides Hitchcock with an opportunity to reintegrate into society as a productive and respected member of the citizenry and should incentivize her to better herself while incarcerated. We therefore conclude that a 40-years-to-life sentence is not the functional equivalent of life without parole.

11

## DISPOSITION

The order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


ADAMS, J.


HANASONO, J.[*]

---

[*] Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.