Filed 7/18/25  P. v. Nania CA2/7

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B336446 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA027967) |
| v. | |
| SALVATORE ANTHONY NANIA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel J. Lowenthal, Judge.  Affirmed.

Patricia S. Lai, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill and Steven E. Mercer, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

In 1996 Salvatore Anthony Nania was convicted of the first degree murder of Christopher Kuaea, which Nania committed when he was 17 years old.  Nania was sentenced to 40 years to life in state prison.  After more than two decades in prison, Nania filed a petition for recall and resentencing under Penal Code section 1170, subdivision (d)(1) (section 1170(d)(1)).[1] Section 1170(d)(1) allows juvenile offenders to petition for recall and resentencing after 15 years of incarceration if they were sentenced to life without the possibility of parole (LWOP).  The superior court denied Nania's petition, finding Nania was ineligible for relief because he was not sentenced to LWOP.

On appeal, Nania contends his 40-years-to-life sentence is the functional equivalent of LWOP, and the denial of resentencing relief under section 1170(d)(1) violates his constitutional right to equal protection of the law.  Although the Courts of Appeal are divided as to whether a sentence of 50 years to life is the functional equivalent of an LWOP sentence, we agree with the Attorney General that a 40-years-to-life sentence is not.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of October 13, 1995, two groups of gang members from the Rancho San Pedro (RSP) gang gathered in San Pedro to have a party honoring a fellow gang member who had recently died.[2]  Nania was a member of the 16th Street Gang,

---

[1]    Further statutory references are to the Penal Code.

[2]    The facts are taken from this court's opinion in *People v. Nania* (Mar. 16, 1998, B108785) [nonpub. opn.].)

which was part of RSP. A gang member known as "Sleepy," who was a member of another gang within RSP, was also at the party.

At about 1:50 the next morning, Raenae Bustillo was walking in the area of the party when a bottle was thrown toward her and struck her in the jaw. An individual identified himself as "Sleepy from the Locos," and said, "I know who you are. Fuck you and fuck your uncle David." Bustillo left to look for her father, Kuaea, who was active in the "Gang Unit Against Violence." When Bustillo found Kuaea, she told him what had happened. Kuaea, Bustillo, Kuaea's girlfriend Lenore, and two of Kuaea's male friends left in Kuaea's van to drive to where the RSP party was continuing. When Kuaea and the group got out of the van, a white Camaro pulled up alongside them with Nania in the front passenger seat. Kuaea yelled, "Who is Sleepy from the Locos?" The driver of the Camaro got out of the car, and Nania remained seated on the passenger side with his hand on a gun.

A fight ensued between Kuaea and the driver of the Camaro, while one of Kuaea's friends fought with other gang members. At some point Lenore said they should go, and when Bustillo turned around, she heard multiple gun shots and saw Kuaea lying near the passenger side of the van. He had been shot 12 times and died from the gunshot wounds.

A jury convicted Nania of first degree murder and found true the allegation that he personally used a firearm in the commission of the offense. (§§ 187, subd. (a), 12022.5, former subd. (a).) At the time of sentencing Nania pleaded guilty to assault with a firearm with respect to an incident that took place on September 29, 1995. The trial court sentenced Nania to an aggregate state prison term of 40 years to life, including 35 years to life on count 1 for murder and five years on count 2 for assault

with a firearm (including firearm enhancements on both counts). (CT 9-12)~ Nania appealed, and this court affirmed. (*People v. Nania* (Mar. 16, 1998, B108785) [nonpub. opn.].)

On July 12, 2023 Nania, representing himself, filed a form petition for recall and resentencing pursuant to section 1170(d)(1) stating he was 17 years old at the time of his commission of the offenses and was eligible for resentencing under *People v. Heard* (2022) 83 Cal.App.5th 608 (*Heard*). He submitted with his petition supporting documentation to show his rehabilitation. After the superior court appointed counsel, Nania filed a supplemental petition, and the prosecutor filed an opposition.

On January 16, 2024, after a hearing, the superior court found Nania ineligible for resentencing on the basis his "sentence does not constitute a de facto LWOP sentence." The court observed that under *People v. Contreras* (2018) 4 Cal.5th 349, 357 (*Contreras*), the Supreme Court held a sentence of 50 years to life was the functional equivalent of LWOP, but the superior court stated it was not "able to make a legal finding that 40 years to life constitutes a functional equivalent sentence to LWOP." Nania timely appealed.

## DISCUSSION

A. *Sections 1170(d)(1) and 3051*

Section 1170(d)(1) provides, "When a defendant who was under 18 years of age at the time of the commission of the offense for which the defendant was sentenced to imprisonment for life without the possibility of parole has been incarcerated for at least 15 years, the defendant may submit to the sentencing court a petition for recall and resentencing." (§ 1170, subd. (d)(1)(A).)

4

The Legislature added subdivision (d)(1) to section 1170 in 2012 (initially codified as subdivision (d)(2)) by the enactment of Senate Bill No. 9 (2011-2012 Reg. Sess.) (Senate Bill 9). The addition of section 1170(d)(1) followed the United States Supreme Court's decision in *Graham v. Florida* (2010) 560 U.S. 48, 82 (*Graham*), which held the Eighth Amendment bars the imposition of an LWOP sentence for a juvenile offender who did not commit homicide. The *Graham* court explained, "A State need not guarantee the offender eventual release, but if it imposes a sentence of life it must provide him or her with some realistic opportunity to obtain release before the end of that term." (*Graham*, at p. 82.)

As the Supreme Court observed in *In re Kirchner* (2017) 2 Cal.5th 1040, 1049, section 1170(d)(1), like *Graham* and its progeny, was "inspired by concerns regarding sentences of life without parole for juvenile offenders." Further, section 1170(d)(1) "provides an avenue for juvenile offenders serving terms of life without parole to seek recall of their sentences and resentencing to a term that includes an opportunity for parole." (*Kirchner*, at p. 1049.) A petition under section 1170(d)(1) must include a statement describing the defendant's remorse, work toward rehabilitation, and a statement that one of four qualifying circumstances is true.[3] (§ 1170, subd. (d)(2).) If the court finds by

---

[3] The four qualifying circumstances under section 1170, subdivision (d)(2), are: "(A) The defendant was convicted pursuant to felony murder or aiding and abetting murder provisions of law. [¶] (B) The defendant does not have juvenile felony adjudications for assault or other felony crimes with a significant potential for personal harm to victims prior to the offense for which the sentence is being considered for recall. [¶]

5

a preponderance of the evidence that one of the four qualifying statements is true, "the court shall recall the sentence and commitment previously ordered and hold a hearing to resentence the defendant in the same manner as if the defendant had not previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170, subd. (d)(5).)

In contrast to the broad resentencing relief provided by section 1170(d)(1), section 3051, enacted by the Legislature in 2013 (effective January 1, 2014; see Stats. 2013, ch. 312, § 4), requires the Board of Parole Hearings to conduct a youth offender parole hearing for specified juvenile offenders during the 15th, 20th, or 25th year of their incarceration, depending on the controlling offense (the offense or enhancement for which the longest term of imprisonment was imposed). (§ 3051, subd. (a)(1) & (b); *People v. Franklin* (2016) 63 Cal.4th 261, 277 (*Franklin*).)

---

(C) The defendant committed the offense with at least one adult codefendant. [¶] (D) The defendant has performed acts that tend to indicate rehabilitation or the potential for rehabilitation, including, but not limited to, availing themselves of rehabilitative, educational, or vocational programs, if those programs have been available at their classification level and facility, using self-study for self-improvement, or showing evidence of remorse."

B.	*Nania's 40-Years-to-life Sentence Is Not the Functional Equivalent of an LWOP Sentence for Purposes of Equal Protection*

As discussed, the United States Supreme Court in *Graham, supra*, 560 U.S. at page 82 held the Eighth Amendment prohibits the imposition of an LWOP sentence for a juvenile nonhomicide offender.  Two years later the United States Supreme Court decided *Miller v. Alabama* (2012) 567 U.S. 460, 465, which held the Eighth Amendment prohibits mandatory LWOP sentences for juvenile homicide offenders.[4]  In the same year the California Supreme Court in *People v. Caballero* (2012) 55 Cal.4th 262, 268 applied the holding in *Graham* to a 110 years-to-life sentence, describing the sentence as a "term-of-years sentence that amounts to the functional equivalent of a life without parole sentence." (*Caballero*, at pp. 265, 267-268.)  The *Caballero* court found "sentencing a juvenile offender for a nonhomicide offense to a term of years with a parole eligibility date that falls outside the juvenile offender's natural life expectancy constitutes cruel and unusual punishment in violation of the Eighth Amendment." (*Id.* at p. 268.)

In *Franklin, supra*, 63 Cal.4th at page 268, following the enactment of section 3051, the California Supreme Court considered a juvenile offender's Eighth Amendment challenge to his 50-years-to-life sentence for first degree murder with a firearm enhancement.  The court explained that section 3051 was

---

[4]	The *Miller* court held that in sentencing a juvenile homicide offender the trial court must have the ability to impose a sentence less than LWOP after taking into account youth-related factors and whether the offender may be rehabilitated. (*Miller v. Alabama, supra*, 567 U.S. at p. 477.)

enacted "to bring juvenile sentencing into conformity with
*Graham*, *Miller*, and *Caballero*." (*Id*. at p. 277.) The court
concluded the juvenile offender's challenge was rendered moot by
the enactment of section 3051 because the juvenile offender was
entitled to a youth offender parole hearing under section 3051
during his 25th year of incarceration, and therefore, he would
have an opportunity for parole during his lifetime. (*Id*. at
pp. 277-278.)[5] The court did not "decide whether a life sentence
with parole eligibility after 50 years of incarceration is the
functional equivalent of an LWOP sentence and, if so, whether it
is unconstitutional in Franklin's case." (*Id*. at p. 268.) However,
the court observed that a sentence affording a youth offender
eligibility for parole after 25 years—when the defendant in
*Franklin* would be 41 years old—"is not the functional equivalent
of LWOP." (*Id*. at p. 279.)

In *Contreras, supra*, 4 Cal.5th at page 356, the California
Supreme Court decided the question left open in *Franklin*. The
court considered "whether a lengthy term-of-years sentence,
though not clearly exceeding a juvenile offender's natural
lifespan, may nonetheless impinge on the same substantive

---

[5]     The Court of Appeal in *People v. Sorto* (2024)
104 Cal.App.5th 435, 448 addressed whether the availability of
parole under section 3051 renders a defendant ineligible for
resentencing under section 1170(d)(1). The court concluded it did
not because section 1170(d)(1) only requires for eligibility that a
defendant "'was sentenced' to the functional equivalent of
LWOP." (*Sorto*, at p. 448; accord, *Heard, supra*, 83 Cal.App.5th
at pp. 628-629.) Because we conclude a sentence of 40 years to
life is not the functional equivalent of LWOP, we need not reach
whether Nania's parole eligibility under section 3051 also
rendered him ineligible for resentencing under section 1170(d)(1).

8

concerns that make the imposition of LWOP on juvenile nonhomicide offenders impermissible under the Eighth Amendment." (*Contreras*, at p. 364.) In resolving this question, the court relied on the teaching in *Graham*, *supra*, 560 U.S. 48, that a "lawful sentence must recognize 'a juvenile nonhomicide offender's capacity for change and limited moral culpability,'" "'hope of restoration,'" "'a chance to demonstrate maturity and reform,'" a "'chance for fulfillment outside prison walls,'" a "'chance for reconciliation with society,'" "'the opportunity to achieve maturity of judgment and self-recognition of human worth and potential,'" and an "'incentive to become a responsible individual.'" (*Contreras*, at p. 367.)

The *Contreras* court concluded that sentences of 50 years or more to life for juvenile nonhomicide offenders were the functional equivalent of LWOP sentences for purposes of the Eighth Amendment because, as contemplated by *Graham*, (1) "[c]onfinement with no possibility of release until age 66 or age 74 seems unlikely to allow for reintegration" into society; (2) a juvenile offender who "has no chance to leave prison for 50 years 'has little incentive to become a responsible individual'"; (3) a 50-years-to-life sentence, "though less harsh than LWOP, is still 'an especially harsh punishment for a juvenile,' who 'will on average serve more years and a greater percentage of his life in prison than an adult offender'"; (4) "*Graham's* observation that juveniles have limited ability to consider consequences when making decisions [citation] applies to a sentence of 50 years to life just as it does to a sentence of LWOP"; and (5) "a judgment that a juvenile offender will be incorrigible for the next 50 years is no less 'questionable' than a judgment that the juvenile

9

offender will be incorrigible 'forever.'" (*Contreras, supra,* 4 Cal.5th at pp. 368-369.)

The Courts of Appeal in *Heard, supra,* 83 Cal.App.5th 608 and *People v. Sorto* (2024) 104 Cal.App.5th 435 (*Sorto*) reviewed this history of juvenile offender sentencing in the Eighth Amendment context and concluded that lengthy term-of-years sentences of over 100 years to life (in *Sorto* a sentence of 130 years to life, plus a determinate term of 10 years, and in *Heard* a sentence of 80 years to life, plus a determinate term of 23 years) were the functional equivalent of explicit LWOP sentences for purposes of an equal protection challenge to section 1170(d)(1). (*Sorto*, at pp. 440, 442-444, 454; *Heard*, at pp. 614-617, 633-634; see *People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1056 [affirming trial court's order granting defendant's section 1170(d)(1) petition for resentencing based on an equal protection challenge with respect to 107-years-to-life sentence imposed for crimes defendant committed when he was 15 years old].)

Nania urges us to extend the reasoning in *Heard* and *Sorto* to hold his sentence of 40 years to life is the functional equivalent of an LWOP sentence. It is not. Although the Supreme Court in *Contreras, supra*, 4 Cal.5th at page 356 held in the context of a nonhomicide offense that sentences of 50 years to life are functionally equivalent to LWOP sentences for purposes of the Eighth Amendment, the Courts of Appeal are divided as to whether a 50-years-to-life sentence is the functional equivalent of an LWOP sentence for purposes of an equal protection analysis. In *People v. Munoz* (2025) 110 Cal.App.5th 499, 503, review granted June 25, 2025, S290828, a majority of this court concluded in the equal protection context that a 50-years-to-life

10

sentence is not the functional equivalent of an LWOP sentence. Division Five of this district in *People v. Cabrera* (2025) 111 Cal.App.5th 650,653, agreed with the Attorney General's concession that in light of the Supreme Court's holding in *Contreras*, the defendant "'who received the same sentence, should be entitled to seek resentencing relief under section 1170, subdivision (d)(1).'" The same division that decided *Cabrera* concluded in *People v. Olmos* (2025) 109 Cal.App.5th 580, 583 that a sentence of 33 years to life was not the functional equivalent of LWOP with respect to resentencing under section 1170(d)(1).

No appellate court has extended *Contreras* to a sentence of 40 years to life in the equal protection context. Moreover, Nania will be eligible for parole based on his 40-years-to-life sentence approximately 10 years earlier than the defendants in *Contreras* and *Munoz*—when he turns 56.[6] Even assuming the reasoning of *Contreras* applies in the equal protection context, we cannot say that a defendant who is released at the age of 56 would not have "a sufficient period to achieve reintegration as a productive and respected member of the citizenry," as envisioned by the United States Supreme Court in *Graham*. (See *Contreras, supra*, 4 Cal.5th at p. 368.)

---

[6] Nania argues we should consider the difficulty that inmates have in receiving a grant of parole at their first parole eligibility hearing in deciding whether a 40-years-to life sentence is the functional equivalent of LWOP. Nania has provided no support for his contention this is a relevant consideration in deciding whether a sentence is the functional equivalent of LWOP for purposes of an equal protection challenge to section 1170(d)(1).

11

We therefore conclude that a sentence of 40 years to life is not the functional equivalent of an LWOP sentence. Because Nania's sentence is not the functional equivalent of an LWOP sentence, there is a rational basis for treating Nania's sentence differently from an LWOP or functionally equivalent LWOP sentence. (See *People v. Hardin* (2024) 15 Cal.5th 834, 847 [where a statute does not involve a suspect classification or fundamental right, there is "'a denial of equal protection only if there is no *rational* relationship between a disparity in treatment and some legitimate government purpose'"]; see *Sorto, supra*, 104 Cal.App.5th at pp. 442, 454 [applying rational-basis review to equal protection challenge to § 1170(d)(1)].)[7]

## DISPOSITION

The order denying Nania's section 1170(d)(1) petition is affirmed.

FEUER, J.

We concur:

SEGAL, Acting P. J.                    STONE, J.

---

[7] Nania does not argue this case involves a suspect classification or fundamental right.